bCANNELLA, Judge.
Defendant, Ernest Serio, appeals from the adjudication as an habitual offender and sentence to four years at hard labor. For the reasons which follow, we vacate the adjudication as an habitual offender and sentence and remand.
Defendant was convicted of promoting prostitution, a violation of La.R.S. 14:88.2. Thereafter, defendant was charged as and adjudicated a fourth felony habitual offender and sentenced to twenty years at hard labor. On appeal, his conviction was affirmed but the habitual offender adjudication and sentence were set aside. The ease was remanded after a finding that one of the predicate convictions was improperly used. State v. Serio, 94-131 (La.App. 5th Cir. 7/1/94), 641 So.2d 604, writs denied, 94-2025 (La. 12/16/94), 648 So.2d 388.
_JsAfter remand, defendant filed numerous motions, including a motion to recuse the trial judge, a motion to quash the habitual offender bill of information and a motion for a new hearing on the habitual offender bill. He also filed a petition for a writ of habeas corpus and an application for post conviction relief. On November 7, 1994, after several defense-requested continuances, defendant was resentenced to four years at hard labor under the habitual offender statute, but without an adjudication of him as an habitual offender. Defendant objected to the habitual offender proceedings as untimely and to the sentence as excessive. On December 2,1994, the trial court considered and denied defendant’s motion regarding the excessiveness of his sentence. Defendant filed a motion for appeal.
Thereafter, defense counsel withdrew and new counsel was appointed for purposes of the appeal. Defense counsel filed an An-ders[1] brief in the case contending that she had found no non-frivolous issues. Additionally, counsel filed a motion to withdraw and notified defendant of his right to file a pro-se supplemental brief. Defendant filed a pro-se brief, raising twelve assignments of error.
On August 21, 1995, this court denied defense counsel’s motion to withdraw and ordered defense counsel to file a brief addressing the issues raised by defendant in his pro se brief. The court granted the state time to respond. All briefs have been filed and the case is ready for appellate review.
Defendant argues that the trial court erred in denying his motion to Uquash the habitual offender bill of information. Defendant argues that the habitual offender proceedings were untimely because the hearing and adjudication took place after defendant had served more than the maximum sentence statutorily provided for the underlying offense. In support of his argument, defendant relies on the case State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974).
In Williams, defendant served his sentence for the underlying felony and was released from custody two months prior to his adjudication as an habitual offender and the enhancement of his sentence. The court held that the habitual offender proceedings were not held timely where defendant had *1275 been discharged from custody before the completion of the habitual offender proceedings. The court reached its conclusion by analogy to “speedy trial” cases reasoning that “[t]he same considerations which underly this constitutional mandate compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement-of-penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed.” Williams, supra, p. 77.
Williams is distinguishable from this case. Here, unlike Williams, defendant has not been released from custody. Further the habitual offender proceedings in this case were fully completed on May 11, 1993, just four months after defendant’s conviction, with defendant being adjudicated a fourth felony offender and sentenced to twenty years at hard labor. This was long before defendant had served the two year maximum sentence for the underlying offense. Defendant’s adjudication and ^sentence as an habitual offender were subsequently set aside on appeal and the case was remanded to the district court. Thereafter, it was only because of numerous continuances granted at the request of defense counsel, that the proceedings were not again completed before the two year period elapsed. There was no unreasonable delay, in this case, in the state’s prosecution of defendant as an habitual offender and defendant was always on notice of the state’s intent to enhance his sentence as an habitual offender. In fact, the record indicates that defendant was never sentenced on the underlying conviction but only sentenced to twenty years at hard labor as a result of the habitual offender proceedings.
Moreover, as in speedy trial cases, the factors to be considered in determining if there has been undue delay in defendant’s prosecution are: (1) the length of the delay; (2) the reasons for the delay; (3) defendant’s assertion of this right; and (4) the prejudice to defendant arising out of the delay. State v. Wille, 559 So.2d 1321 (La.1990). In the instant case, the delay in defendant’s sentencing was caused by appellate delays. Defendant was adjudicated an habitual offender and sentenced to twenty years at hard labor within four months of his initial conviction. . On appeal, this court set aside the initial habitual offender adjudication and sentence, necessitating a remand, re-adjudication and resentenee. Appellate delays are beyond the control of the state. Furthermore, defendant did not assert any rights he may have had to be sentenced sooner. To the contrary, the sentencing was further delayed by several defense motions for continuances. Also, defendant alleges no prejudice by any delays that have occurred in these proceedings.
1 sTherefore, we find no error in the trial court’s refusal to grant defendant’s motion to quash the habitual offender bill of information for untimely prosecution.
Next, defendant argues that the trial court erred in failing to determine defendant’s habitual offender status prior to resentencing him. On remand, the trial court simply re-sentenced defendant to four year at hard labor without first determining defendant’s habitual offender status, that is, whether defendant was a second or third offender. In fact, it was not clear from the transcript that defendant was even being sentenced as an habitual offender except that, after the sentencing, the assistant district attorney requested that the trial court note for the record that defendant was being sentenced under La.R.S. 15:529.1. Defendant relies on the case of State v. Swaingan, 630 So.2d 300 (La.App. 5th Cir.1993) in support of this assignment of error.
In Swaingan, this court set aside a defendant’s sentence as an habitual offender where, on remand after it was found that one of the convictions used to support the enhancement of defendant’s sentence was used improperly, the trial court did not determine defendant’s status as an habitual offender before resentencing him. This court reasoned that the trial court had misinterpreted the appellate action in concluding that only resentencing was necessary after the appellate court had found that defendant was erroneously adjudicated a fourth felony offender. To the contrary, this court held that upon finding a defect in the original habitual offender proceedings, on remand, the trial court is required to determine defendant’s *1276 habitual offender status again prior to resen-tencing him as an 17habitual offender.
We find Swaingan on point and dispositive of the instant case. After setting aside defendant’s sentence as a fourth felony offender, upon finding that an earlier conviction was erroneously used to enhance defendant’s sentence, defendant’s adjudication as an habitual offender was thereby set aside. On remand, it was incumbent on the trial court to re-adjudicate defendant’s habitual offender status, and dismiss the habitual offender bill or find defendant a specific habitual offender, if the evidence permitted, before resentencing him. In failing to do so the trial court fell into error necessitating our reversal of the sentence and remand, so that the trial court can determine defendant’s habitual offender status prior to his being resentenced.
Defendant’s remaining assignments of error, with one exception, need not be discussed in this appeal because they are moot in view of our determination to set aside the sentence. However, in the interest of judicial economy and to prevent the same error from recurring on remand, we feel constrained to discuss defendant’s assignment of error involving the denial of defendant’s motion to recuse the trial judge.[2] Defendant based his motion to recuse the trial judge on the fact that the trial judge is the stepmother of the prosecuting assistant district attorney in the case.
IsThe recusal article, La.C.Cr.P. art. 671 provides in pertinent part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(2) ... is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree.
In the instant case, the trial judge is the step-mother of the prosecuting assistant district attorney in the case. Thus, the question is whether, under La.C.Cr.P. art. 671, a step-mother is deemed to be “related”, to her step-son “within the second degree.”
No cases have been cited to us regarding the nature of the relationship between a step-parent and step-child and we have found no case on that question in the area of judicial recusals. Thus, the issue is res nova. We must determine what was intended by the word “related” as used in the recusal article.
Black’s Law Dictionary, Sixth Edition, defines “relative” as follows:
A kinsman; a person connected with another by blood or affinity. When used generically, includes persons connected by ties of affinity as well as consanguinity, and, when used with a restrictive meaning, refers to those only who are connected by blood.
Individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree. Bankruptcy Code, § 101.
A person or thing having relation or connection with some other person or thing; as relative rights, relative powers, infra. See also Relation. (Emphasis provided).
The word “relation” is defined in part as “[a] person connected with another by blood or affinity.” The Louisiana case, Liprie v. Michigan Millers Mut. Ins. Co., 143 So.2d 597 (La.App. 3rd Cir.1962) is cited.
|9In Liprie the court was presented with the question of whether a daughter-in-law was a “relative” of her husband’s parents in the context of a liability policy. The court *1277 found that the parties were “related” based on common dictionary definitions, as follows:
In Black’s Law Dictionary, 4th Ed., and in Webster’s Third New International Dictionary, the word ‘relative’ is defined as, ‘A person connected with another by blood or Affinity.’ The American College Dictionary, Random House, defines the term as ‘One who is connected with another or others by blood or by Marriage.’
The word “step” is defined in Black’s dictionary as follows:
When used as prefix in conjunction with a degree of kinship, is repugnant to blood relationship, and is indicative of a relationship by affinity.
“Affinity” is defined in Black’s Dictionary, in part, as:
Relation which one spouse because of marriage has to blood relatives of the other. State v. Hooper, 140 Kan. 481, 37 P.2d 52.
The connection existing, in consequence of marriage, between each of the married persons and the kindred of the other. Kest v. Lewis, 169 Ohio St. 317, 159 N.E.2d 449, 450.
Degrees of relationship by affinity are computed as are degrees of relationship by consanguinity. The doctrine of affinity grew out of the canonical maxim that marriage makes husband and wife one. The husband has the same relation, by affinity, to his wife’s blood relatives as she had to them by consanguinity and vice versa. State v. Hooper, 140 Kan. 481, 37 P.2d 52.
It is clear from the above definitions, that the word “related,” when used generally, includes persons connected by ties of affinity, that is, by the consequence of marriage to the kindred of the spouse, and would lioinclude the step-parent/step-child relationship. Thus, the only question remaining is whether the word “related” as used in La. C.Cr.P. art. 671, was used in its general sense or whether a more restrictive use of the word was intended.
In considering the intent of La.C.Cr.P. art. 671, we are guided by State v. LeBlanc, 367 So.2d 335 (La.1979) in which the Louisiana Supreme Court, addressing a recusal question, noted that the appearance of judicial impropriety or partiality is a paramount concern and is to be avoided at all costs. The Court cited with approval the following:
The American Bar Association has recommended that a judge should disqualify himself “in a proceeding in which his impartiality might reasonably be questioned.” Code of Judicial Conduct, Canon 3(C)(1). The federal recusal statute has adopted this standard also in 28 U.S.C. s 455(a). Professor Orfield stated that “courts should not be only impartial but above the suspicion of partiality.” Orfield, Criminal Procedure From Arrest to Appeal, 374 (1947), as quoted in the Official Revision Comment for C.Cr.P. 671. In State v. Lemelle, 353 So.2d 1312 (La.1977), this court found that even the appearance of impartiality, as well as impartiality itself, outweighs the inconvenience caused by the recusal of the trial judge.
Numerous cases have cited and relied on Leblanc, noting that the appearance of impropriety is to be avoided in criminal cases. State v. Smith, 93-1385 (La.App. 3rd Cir. 4/6/94), 635 So.2d 512; State v. Bolen, 514 So.2d 691 (La.App. 2nd Cir.1986); State v. LaCour, 493 So.2d 756 (La.App. 2nd Cir.1986). Thus, in view of the jurisprudential overlay on La.C.Cr.P. art. 671, requiring that even the appearance of impropriety be avoided, we find that the use of the word “related” in La.C.Cr.P. art. 671 |uwas not intended in the restrictive sense, but was used generally to include relationships by affinity, in this case, the step-pareni/step-child relationship.
Accordingly, for the reasons stated above, the adjudication as an habitual offender and sentence of defendant are vacated, set aside and the case is remanded.
ADJUDICATION AND SENTENCE VACATED; CASE REMANDED.

. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. Defendant contends that the trial judge denied his motion to recuse her. However, such a denial of the motion does not appear of record. There is no notation on the motion itself evidencing denial by the trial court and there is nothing in the minutes indicating that the motion was considered and denied. We note, however, that La.C.Cr.P. art. 673 limits a trial judge’s authority to act in the case after a motion to recuse has been filed, but, in view of our ruling setting aside the habitual offender proceedings and sentence on other grounds, we will not address what effect La.C.Cr.P. art. 673 would have had on the proceedings. Nevertheless, because the issue is likely to arise again, in view of the fact that the case is being remanded, judicial economy dictates that we address the issue.