904 So.2d 810 (2005)
STATE of Louisiana
v.
Kirt B. STONE.
No. 05-KA-82.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*811 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Desiree M. Valenti, Martin A. Belanger, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, Louisiana, for Plaintiff/Appellee.
Mary Constance Hanes, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Defendant, Kirt B. Stone, appeals his conviction for possession of cocaine, a violation of LSA-R.S. 40:967(C). For the following reasons, defendant's conviction is affirmed, and we remand to the trial court in order to correct an error patent on the face of the record.
On November 13, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Kirt B. *812 Stone, with possession of cocaine, a violation of LSA-R.S. 40:967(C). Stone was arraigned on December 1, 2003 and pled not guilty. On May 12, 2004, the State and the defense stipulated that Stone was competent to stand trial. Stone's motion to suppress evidence was denied on June 30, 2004.
On July 22, 2004, the case was tried by the judge who found Stone guilty as charged. On September 30, 2004, the trial court denied Stone's motion for new trial and sentenced Stone to imprisonment at hard labor for five years. On that same date, the trial court also denied Stone's motion to reconsider sentence and granted his motion for appeal. The State filed a multiple bill on December 8, 2004 alleging Stone to be a fourth felony offender.
Jefferson Parish Sheriff's Office (JPSO) Street Crimes Unit Deputy Sean Cursain testified that, on October 15, 2003, at approximately 10:06 p.m., he and his partner, John Mehrtens, were stopped at a red light at the intersection of LaBarre Road and Airline Drive headed westbound when they observed a vehicle coming down the service road that accessed the Cinema Motel. The vehicle sped up before the light changed and made a quick right turn and then a quick left turn headed eastbound onto Airline Drive. Deputy Mehrtens could not recall whether the vehicle went into the left or middle lane on Airline Drive, but he was certain that it did not go into the right lane. Both deputies recalled that the vehicle's tires squealed.
When Deputy Cursain noticed that the driver, whom he later identified in court as Stone, was not wearing a seat belt, he immediately made a U-turn and began to initiate a traffic stop by illuminating his emergency lights. He explained that he was able to see that Stone was not wearing his seat belt because Stone's driver side window was down. Deputy Cursain notified other street crimes units that he was going to make a traffic stop. Stone's vehicle started to pull over to the right and slow down, but it did not stop.
Deputy Cursain positioned himself so he could see the driver and observed him toss at least three objects out of his window with his left hand. Cursain clearly remembered that two of the objects were brighter and a whitish color and that the third object was smaller but darker. Deputy Mehrtens testified that he believed that the objects being tossed were narcotics.
Deputy Cursain advised deputies in the area that the driver was tossing objects out of the window near the Sav-A-Center and the Pelican Homestead building, and he told them to go and retrieve those objects. He testified that he was no more than two car lengths away from the vehicle when he observed Stone toss the objects, that his view was unobstructed, and that he could see clearly.
The vehicle proceeded eastbound onto Airline Drive for approximately another quarter mile before it began to pull to the shoulder of the road near Ridgewood Drive. Deputies Cursain and Mehrtens testified that Deputy Ricky Boudreaux notified them on the radio at that time that he had located the discarded objects and believed them to be cocaine and marijuana.
As the vehicle was coming to a stop, the front passenger door opened slightly, which indicated to Deputy Cursain that the passenger might try to jump out and run. The deputies conducted a high risk stop once the vehicle came to a complete stop. They ordered the driver out first, then the front passenger, and finally the two rear passengers.
After the deputies had ordered all subjects out of the vehicle, they were placed in handcuffs. The deputies approached the *813 vehicle to ensure that no one was hiding inside. At that point, Deputy Cursain detected a distinct odor of burning marijuana. When he looked inside the vehicle, he observed a "blunt" or marijuana cigarette burning in the ashtray.
Deputy Boudreaux subsequently met with Deputy Cursain and turned over the objects he had retrieved: a clear plastic bag containing a white powdered substance and a smaller clear plastic bag containing green vegetable matter. Deputy Cursain testified that approximately $442 was found in Stone's pockets and pinned to Stone's shirt, and that a clear plastic bag containing green vegetable matter was found in Stone's right front pocket. He explained that the marijuana found on Stone was packaged similarly to the objects that Deputy Boudreaux had recovered earlier.
Because Stone could not produce proof of insurance, a vehicle inventory search was conducted in accordance with JPSO policy. During that search, Deputy Cursain found a pot containing an off-white colored substance in the trunk. A field test indicated a positive presence of crack cocaine inside the pot. Deputy Cursain conducted a field test on the other evidence as well. State's Exhibit 1 tested positive for the presence of cocaine, and State's Exhibits 2, 3, and 4 tested positive for the presence of marijuana.
Deputies John Mehrtens testified at trial, and his testimony largely corroborated that of Deputy Cursain.
Deputy Boudreaux testified that he was near Causeway Boulevard and Airline Drive approximately one or two miles away from the scene when he received the call that objects were being thrown out the window. He testified that the officer on the radio told him to look for the objects in the area of LaBarre Road and Airline Drive.
Deputy Boudreaux explained that it took him approximately thirty seconds to travel from where he was to that location and that he and his partner blocked off the middle and right lanes and allowed vehicles to only travel in the left lane while he looked for the objects. Boudreaux testified that his partner stayed with the police unit and helped direct traffic while he searched that area thoroughly using flashlights and headlights and that he found the two objects in the middle of Airline Drive. Finding that no other baggies were in the area, afterwards Boudreaux went to the scene and gave Deputy Cursain those items and then went back to his vehicle and directed traffic on Airline Drive.
Andrea Travis, a JPSO forensic scientist and a stipulated expert in the field of drug analysis, testified that State's Exhibit 1 tested positive for the presence of cocaine and that State's Exhibits 2, 3, and 4 tested positive for the presence of marijuana. She further testified that State's Exhibit 5, the metal pot, tested negative for controlled dangerous substances.
After the State rested its case, the defense called Jessica Smith as a witness. Smith, age 17, testified that Stone, who was a family friend, and her cousin, Dione, were sitting in the front seat of the vehicle and that she and her sister, Brittney, were sitting in the back seat. Smith explained that, on the night in question, they went to Stone's room at the hotel to get a radio for Stone's birthday party that was being held at her house. Afterwards, they got into the vehicle, traveled down the service road, and stopped at the red light. When the light turned green, they proceeded to turn onto a highway. As they traveled, she heard police sirens, and the vehicle pulled over. The officers told them to get out of the vehicle one-by-one, and they complied.
*814 Smith testified that Stone was not driving "crazy" that night, that she did not remember Stone squealing his tires, and that Stone did not try and drive away from the officers when the officers' lights came on. Smith further testified that the people sitting in the front seat had their seat belts on but that she did not have her seat belt on. Smith said that she did not see any drugs being thrown out the window and that the windows in the vehicle were up. Smith stated that nobody was using drugs in the vehicle, that she did not smell any marijuana, that she did not see any drugs at any point, and that the pot in the trunk contained soap powder for washing the car.
Brittney Smith testified at trial, and her testimony largely corroborated that of Jessica Smith.
In his first assignment of error, Stone argues that the evidence was insufficient to support his conviction for possession of cocaine because the State failed to exclude every reasonable hypothesis of innocence. He points out that the bag of cocaine was discovered only after a roadblock had been formed by the officers and numerous other vehicles had passed by. He contends that the bag of cocaine could have been discarded by the occupants of the other vehicles traveling through the area who may have feared that they were about to be stopped.
Stone also contends that the wind could have blown the bag to where it was found in the middle of the street and, therefore, the exact location of where the bag was found was not significant. He notes that the officer who allegedly saw him throw objects out of his window lost sight of those items and that the officers could not know whether the bag of cocaine later found came from his vehicle. He also notes that that bag of cocaine was found only after some time had passed.
The State responds that the evidence was sufficient to support the conviction.
In determining a challenge to the sufficiency of the evidence, the reviewing court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.[1] The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing.[2]
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[3] In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."[4] The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by defendant offers an exculpatory explanation of the events, but rather *815 the reviewing court must "determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt."[5]
To support a conviction for possession of cocaine, the State must prove that defendant knowingly or intentionally possessed the substance.[6] In a case somewhat similar to the case at bar, State v. Hopson,[7] Deputies Norman and Leconte of the street crimes unit were patrolling the West Bank Expressway when Norman observed defendant driving a vehicle without a license plate. As Norman turned on his police lights and siren to pull the vehicle over, he saw the driver's side window roll down and observed the defendant throw something out of the window with his right hand. After the defendant stopped his vehicle, Norman asked defendant to step out of the vehicle, and he patted down the defendant but did not find any weapons. The officer walked twenty yards behind defendant's vehicle and retrieved two envelopes of marijuana and a rock of cocaine in the same area as the envelopes. On appeal, defendant asserted that the rock could have been thrown by someone else or that the rock was already on the ground when the defendant threw the marijuana out of the car. This Court concluded that the jury could have found beyond a reasonable doubt that the defendant threw the rock of cocaine out of the window, and, therefore, was guilty of possession of cocaine.
In the instant case, Deputy Cursain advised other street crimes units over the radio that Stone tossed two white objects and one darker one believed to be narcotics out of the window on Airline Drive near the Sav-A-Center and the Pelican Homestead Building and to go and retrieve them. Approximately thirty seconds later, Deputy Boudreaux arrived at that location, blocked off traffic, and retrieved a bag of cocaine and a bag of marijuana which he immediately brought to Deputy Cursain. Deputy Boudreaux found the drugs in the area where Deputy Cursain told him they would be, and he found them very shortly after they were thrown. Additionally, marijuana, which was packaged similarly to the objects found by Deputy Boudreaux, was found on Stone's person, and a marijuana cigarette was found burning in the ashtray.
Although the defense witnesses testified that nobody threw anything out of the vehicle, the trial judge apparently found the State's witnesses more credible. When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[8] It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.[9]
In light of the foregoing, we find that the trial court could have found beyond a reasonable doubt that Stone threw the bag of cocaine out of the window, and, therefore, was guilty of possession of cocaine.
Pursuant to Stone's request, the record was reviewed for errors patent, according *816 to LSA-C.Cr.P. art. 920; State v. Oliveaux,[10] and State v. Weiland.[11] The review reveals the following errors in this case:
The trial court failed to properly inform Stone of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. At sentencing, the trial court advised Stone that he had "two years to seek post-conviction relief." This Court has held that this type of advisal is incomplete.[12] LSA-C.Cr.P. art. 930.8 provides that a court shall not consider an application for post-conviction relief, including applications which seek an out-of-time appeal, if the application is filed more than two years after the judgment of the conviction and sentence has become final. Therefore, we remand with instructions to the trial court to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending written notice to the defendant and to file written proof that defendant received the notice in the record of the proceedings.
The trial court failed to observe the twenty-four-hour delay between denial of Stone's motion for new trial and sentencing, as required by LSA-C.Cr.P. art. 873. Although LSA-C.Cr.P. art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least twenty-four hours after denial of post-trial motions, where no objection has been raised regarding the sentence imposed and there is no showing or suggestion that Stone was prejudiced by the failure to observe the delay, judicial efficiency dictates that the appellate court need not follow the formality of remanding for reimposition of a sentence which has not been challenged.[13] Here, Stone has not challenged the sentence nor showed that he suffered any prejudice as a result of the failure to waive the twenty-four-hour delay. Accordingly, no action need be taken.[14]
For the foregoing reasons, defendant's conviction is affirmed, and we remand with an instruction to the trial court to inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8.
AFFIRMED; REMANDED.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56 (quoting State v. Mussall, 523 So.2d 1305, 1311 (La.1988)).
[3] State v. Harris, 03-1297 (La.App. 5 Cir. 3/30/04), 871 So.2d 599, 609-610, writ denied, 04-1287 (La.10/29/04), 885 So.2d 583, and writ denied, 04-1289 (La.10/29/02), 885 So.2d 584.
[4] LSA-R.S. 15:438; State v. Harris, supra.
[5] State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83 (emphasis as found in the original).
[6] LSA-R.S. 40:967(C).
[7] 97-509 (La.App. 5 Cir. 11/25/97), 703 So.2d 767, 770.
[8] State v. Cazenave, 00-183 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151.
[9] Id.
[10] 312 So.2d 337 (La.1975).
[11] 556 So.2d 175 (La.App. 5 Cir.1990).
[12] State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
[13] State v. White, 404 So.2d 1202, 1204 (La.1981).
[14] State v. Hill, 568 So.2d 1170 (La.App. 5 Cir.1990).