917 So.2d 633 (2005)
STATE of Louisiana
v.
Edward MORRIS, Jr.
No. 05-KA-290.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*635 John M. Crum, Jr., District Attorney, Fortieth Judicial District, Parish of St. John the Baptist, Rodney A. Brignac Assistant District Attorney, Edgard, Louisiana.
Edwin D. Hawkins, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On September 12, 2002, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Edward Morris, Jr., with illegal carrying of a weapon in violation of LSA-R.S. 14:95. Defendant was arraigned on October 21, 2002 and pled not guilty. The trial court found probable cause at the preliminary hearing on March 19, 2003. On December 17, 2003, the trial court found defendant competent to stand trial.
On April 26, 2004, the state amended the bill of information to charge defendant with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1, rather than illegal carrying of a weapon. Defendant was arraigned on the amended bill on May 10, 2004 and pled not guilty.
The case was tried on June 15 and 16, 2004 before a jury which found defendant guilty as charged. Defendant filed a motion for new trial and/or motion for post-verdict judgment of acquittal that was denied on July 14, 2004. On that same date, the trial court sentenced defendant to 11 years with the Department of Corrections without benefit of parole, probation, or suspension of sentence and imposed a fine *636 of $1,000.00. On December 22, 2004, defendant filed a motion for appeal that was granted.

FACTS
Lt. Vernon Bailey of the St. John the Baptist Parish Sheriff's Office testified that, on August 11, 2002, at 2:00 a.m., he was off-duty and having a drink at his brother's nightclub, the Odyssey Lounge, when a fight started inside the bar. Lt. Bailey further testified that his brother and two bouncers escorted some black males from the bar, and that he (Lt.Bailey) walked outside to assist in getting them out of the parking lot. When he did so, Lt. Bailey observed defendant, who he knew, walk back towards the bar in a "rage" with a silver-plated nine millimeter gun with a black hand grip in his hand and say that he was going to "f-up somebody." Lt. Bailey told defendant that he needed to turn around, go back to his car, and leave the premises. He testified that defendant turned around and started walking back towards the area where his green Ford LTD was parked. Lt. Bailey explained that he was not sure if defendant ever got to his car, but believed he did, because he saw the LTD start to drive away from the parking lot.
Sgt. Jason Weber of the St. John the Baptist Parish Sheriff's Office testified that, when he arrived at the Odyssey Lounge, he was approached by Lt. Bailey who advised him that he needed to stop defendant because he had a gun and was leaving in a vehicle. Sgt. Weber looked in the direction that Lt. Bailey was pointing to and observed defendant standing outside in the parking lot adjacent to the bar behind the Circle K. Sgt. Weber testified that, as he started walking towards defendant, he observed defendant go behind a vehicle, pull a silver gun from his waistband, and place it underneath the vehicle. Sgt. Weber quickly approached defendant and advised him several times to get on the ground; however, defendant failed to comply. Sgt. Weber explained that another officer came running over and that they both tackled defendant, pulled him to the ground, and handcuffed him.
Deputy Charles Wale of the St. John the Baptist Parish Sheriff's Office testified that he arrived at the Odyssey Lounge at 2:27 a.m. and was told to detain defendant, so he looked through the crowd to locate him. When he did so, he observed defendant kneel down and drop something behind a car that was parked on the northeast corner of the Circle K. Deputy Wale then saw defendant proceed to the northwest corner of the Circle K where he dropped something else and backtrack north to what he assumed was defendant's vehicle. Deputy Wale testified that defendant was then detained by Sgt. Weber and Corporal C.J. Remondet. At that point, Deputy Wale looked underneath the vehicle and located a silver nine millimeter Smith and Wesson semiautomatic pistol with black grips. Deputy Wale noted that the weapon he recovered was loaded with one round in the chamber and that it was ready to be fired.
The state and the defense stipulated that defendant had a prior conviction on March 15, 2000 for possession of cocaine in case number 99-560 of the 40th Judicial District Court.
After hearing the testimony and considering the evidence, the jury found defendant guilty as charged.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the evidence was legally insufficient to support the verdict, and that the circumstantial evidence failed to exclude every reasonable hypothesis of innocence. He contends that Lt. *637 Bailey's testimony was inconsistent, in that at the preliminary hearing Lt. Bailey testified that defendant drove away in his car (before being apprehended), but at trial, he testified that defendant was apprehended as he was walking away. He further contends that the evidence that defendant had actual or constructive possession of a firearm, and that the firearm in evidence was the one he possessed, is circumstantial and suspect and thus cannot support the conviction.
Defendant filed a motion for new trial pursuant to LSA-C.Cr.P. art. 851(1) and (2)[1] or alternatively a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821(B).
With respect to the denial of the motion for new trial based on LSA-C.Cr.P. art 851(1), this Court in State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50 stated in pertinent part (citations omitted):
The denial of a defendant's motion for new trial, based on LSA-C.Cr.P. art. 851(1), presents nothing for review on appeal. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances.
The question of sufficiency of evidence is properly raised, in the trial court, by a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. art. 821. State v. Ellis, 95-1005 (La.App. 5 Cir. 3/26/96), 672 So.2d 1007, 1008 (citation omitted); State v. Gibbs, 03-967 (La.App. 5 Cir. 12/30/03), 864 So.2d 866, 874. Thus, defendant's assignment is properly before this Court.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Boss, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 77, writ denied, XXXX-XXXX (La.5/14/04), 872 So.2d 508. On appeal, the reviewing court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support *638 the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
The elements necessary to sustain a conviction under LSA-R.S. 14:95.1 are: (1) possession of a firearm; (2) prior conviction for an enumerated felony; (3) absence of the ten-year statutory limitation period; and (4) the general intent to commit the crime. State v. Gordon, 00-1013, p. 14 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 142, writs denied, XXXX-XXXX (La.12/19/02), 833 So.2d 336; XXXX-XXXX (La.2/14/03), 836 So.2d 134. Actual possession of a firearm is not necessary to satisfy the possession element of the statute; it is sufficient that the subject had constructive possession. State v. Blount, 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775. A person is in constructive possession of a thing if it is subject to his dominion and control. Id.; see also State v. Bush, 02-0247, pp. 5-6 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 864, writ denied, XXXX-XXXX (La.1/24/03), 836 So.2d 42. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. State v. Blount, supra; State v. Jackson, 97-1246, p. 6 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 937, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37. The jurisprudence additionally requires proof that the offender was aware that a firearm was in his presence, and that he had the general criminal intent to possess the weapon. State v. Gordon, 00-1013 at p. 14, 803 So.2d at 143.
In the instant case, defendant stipulated to the fact that he was convicted of a felony and sentenced on March 15, 2000, which was within the ten-year statutory limitation period. Thus, the state only needed to prove possession and general intent at trial.
Lt. Bailey testified at trial that he observed defendant approach the Odyssey Lounge with a silver-plated 9 mm gun with a black hand grip in his hand. Sgt. Weber testified at trial that he observed defendant go behind a vehicle, pull a silver gun from his waistband, and place it underneath the vehicle. Deputy Wale testified at trial that he saw defendant kneel down and drop something behind a vehicle, and that when he looked underneath the vehicle, he located a silver 9 mm Smith and Wesson semiautomatic pistol with black grips.
Defendant notes discrepancies in Lt. Bailey's testimony at the preliminary hearing and at trial regarding whether defendant was apprehended while walking to his vehicle, or whether defendant drove away in his vehicle before he was apprehended. Lt. Bailey testified at the preliminary hearing that he saw defendant get into his car with a gun in his hand and leave in his vehicle, and that right after that one of the units apprehended defendant behind the Circle K store. Lt. Bailey testified at trial that he was not sure if defendant ever got to his vehicle, but he believed defendant did because he saw defendant's vehicle start to drive away from the parking lot.
Lt. Bailey's testimony at the preliminary hearing is irrelevant for purposes of determining whether the evidence was sufficient at trial because it was not heard by the jury. And an examination of Lt. Bailey's trial testimony reveals no inconsistencies. It is also noted that Lt. Bailey's testimony at trial was almost the same as that at the preliminary hearing, except that Lt. Bailey was not as sure at trial whether defendant actually got into his vehicle before he saw it moving.
*639 Additionally, the jury could have reasonably found that Lt. Bailey may have seen someone else driving defendant's vehicle or one that looked like it and simply assumed it was defendant. Nevertheless, any inconsistencies in Lt. Bailey's testimony regarding this issue are minor considering the testimony of Lt. Bailey and Sgt. Weber regarding their observation that defendant possessed a hand gun, the testimony of Deputy Wale who saw defendant drop something behind a vehicle and then shortly thereafter retrieved a gun, and the similar descriptions of the gun by all three witnesses.
Defendant argues that the circumstantial evidence failed to exclude every reasonable doubt. It is noted, however, that the testimony of Lt. Bailey and Sgt. Weber was direct evidence of actual possession, and that only Deputy Wale's testimony was circumstantial.
The jury heard all the evidence and obviously found the officers' testimony to be credible. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt. State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
In light of the foregoing, we find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was in possession of a firearm as a convicted felon and that he had the general intent to possess the weapon.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that he was denied his constitutional right to a fair trial when the trial court erred by failing to charge the jury that one of the responsive verdicts was attempted possession of a firearm by a convicted felon. He further argues that the trial court erred when it denied his motion for new trial based on this claim.
The record reveals that, at the end of the first day of trial on June 15, 2004, the trial judge stated that he would like to meet with the prosecutor and defense counsel the next morning to talk about jury charges, among other things. The transcript from June 16, 2004, the second and last day of trial, does not reflect that a discussion regarding jury charges ever took place. That transcript does indicate that, at the end of the trial on that day, the trial judge instructed the jury that it could find defendant either guilty as charged or not guilty of possession of a firearm by a convicted felon. The record does not reflect that defendant lodged a contemporaneous objection to that charge.
On July 9, 2004, defendant filed a "motion for new trial and/or post-verdict judgment of acquittal" arguing the same issues that he raises on appeal, including the issue regarding the trial court's failure to inform the jury that one of the responsive verdicts was attempted possession of a firearm by a convicted felon.
On July 14, 2004, the trial judge denied the motion, stating, inter alia:
The jury charges, again, is something that we had discussed at the trial. I don't remember the jury charge having that objection at the time. I don't think the charge was improper, so therefore I'm going to deny the motion for a new trial based on the improper jury charge.
LSA-C.Cr.P. art. 814 does not mandate responsive verdicts for possession of a firearm by a convicted felon; therefore, the responsive verdicts are set forth in LSA-C.Cr.P. art. 815 as: (1) guilty; (2) guilty of a lesser and included grade of the offense *640 even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) not guilty.
Attempted possession of a firearm by a convicted felon is a responsive verdict to a charge of possession under LSA-R.S. 14:95.1. State v. Williams, 470 So.2d 356, 358 (La.App. 5 Cir.1985) (citations omitted).
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. art. 841. LSA-C.Cr.P. art. 801(C) also provides:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
In State v. Nguyen, 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 910, writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1064, defendant complained that the trial court erred in failing to include a limiting instruction on "other crimes" evidence in its jury charges. This Court noted that there was no mention of "other crimes" evidence and that defendant neither requested a special jury charge nor timely objected to the final jury charges. This Court stated that it had held that, the requirements of Prieur[2] notwithstanding, a defendant is required to make a timely objection under LSA-C.Cr.P. art. 801 in order to preserve a jury charge issue for review. This Court concluded that, because defendant did not make a timely objection, he did not properly preserve the issue for appellate review and, therefore, this Court was precluded from addressing this issue. Nguyen, 888 So.2d at 910. See also State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 166-167.
In State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 354-355, defendant argued that the trial court erred by failing to include all responsive verdicts provided for in LSA-C.Cr.P. art. 814(26) for theft of property having a value of $500.00 or more. He claimed that the court failed to include the responsive verdicts of unauthorized use of a movable valued at over $1,000.00, and unauthorized use of a movable valued at under $1,000.00. This Court stated defendant was not entitled to have the responsive verdict of unauthorized use of a movable over $1,000.00 since the bill did not state a value over $1,000.00.
This Court could not ascertain whether defendant lodged a contemporaneous objection to this alleged error because the jury instructions were not transcribed. It found that based on LSA-C.Cr.P. arts. 801 and 841, defendant was precluded from raising the issue on appeal if he did not object to the trial court's failure to include all the listed responsive verdicts. This Court further found that even if defendant's allegation was correct, that defendant failed to demonstrate that the exclusion of the responsive verdict was prejudicial, in light of the fact that the jury returned with a verdict of guilty as charged. In analyzing this issue, this Court stated
Before the conviction can be reversed on this basis, defendant must demonstrate that the inclusion or exclusion of a responsive verdict was prejudicial and that fundamental due process has been violated. State v. Serio, 94-131 (La. *641 App. 5 Cir. 7/01/94), 641 So.2d 604, 607-608, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388, reconsideration denied, 94-2025 (La.3/17/95), 651 So.2d 261, appeal after remand, 95-338 (La.App. 5 Cir. 2/14/96), 670 So.2d 1273.
State v. Carter, 685 So.2d at 355.
In State v. Turner, 337 So.2d 1090, 1091-1092 (La.1976), defendants alleged that the trial judge erred in submitting to the jury only two responsive verdicts for simple robbery, namely, guilty as charged and not guilty. Defendants pointed out that, under the terms of LSA-C.Cr.P. art. 814(A)(41), at the time of this trial, responsive verdicts to the charge of simple robbery included guilty of attempted simple burglary. The Supreme Court stated that, although defendant was correct in that the law did at the time of this trial require the submission of the additional responsive verdict, that defendants were incorrect in labeling the argument an assignment of error, because there was no objection made during the course of the trial with respect to the foregoing.
The Supreme Court noted that defendants conceded the foregoing and argued that submission of inadequate responsive verdicts to the jury constituted an omission of error "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence" under the provisions of article 920(2). The Supreme Court stated that the legal question submitted had just recently been decided adversely to the defense position when in State v. Craddock, 307 So.2d 342, 343 (La.1975), it had held that "alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, is not reviewable under Art. 920(2) and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error." Accordingly, the Supreme Court concluded that there was no merit in the defendants' assignment. Turner, 337 So.2d at 1091-1092.
In the instant case, defendant failed to make a timely objection to the trial court's exclusion of attempted possession of a firearm by a convicted felon as a responsive verdict. Therefore, we find that defendant is precluded from raising the issue on appeal. Additionally, we find that the trial court did not err in denying the motion for new trial on this basis since defendant failed to lodge a contemporaneous objection to the exclusion of the responsive verdict in question.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the trial court erred when it failed to exclude Juror No. 4 and denied him the opportunity to question that juror regarding his partiality, thus denying his constitutional right to a fair and impartial trial. Defendant contends that Juror No. 4 should have been disqualified after trial began when he learned that Juror No. 4 attended high school with a state's witness, Deputy Wale, and because the juror displayed the peace sign to Deputy Wale during the trial.
The record reflects that, on June 15, 2004, the first day of trial, Juror No. 4, David Pfeifer, was called as a potential juror in panel number one. The trial judge called out the names of potential witnesses, including that of Deputy Charles Wale, and asked whether anyone knew or was related to any of them. Pfeifer was silent.
Pfeifer subsequently stated that he was married, that he had one child who was one-year-old, that he was employed by Sunshine Equipment Company as a mechanic, that his wife worked at Walgreen's in the photo lab, and that he had never *642 served on a jury before. He said that he did not have a problem judging another human being, and that he did not feel like a police officer was more likely to lie than anybody else. The state and the defense accepted Pfeifer as a juror.
The record reflects that, on June 16, 2004, the second day of trial, defense counsel informed the trial judge that when he left the courtroom the day before he was informed that Pfeifer and Deputy Wale were "more than good friends" and in fact, they were "hanging buddies" and had been seen together at the Daiquiri Shop. Defense counsel stated that he had sent a subpoena to East St. John High School that morning and learned that both Pfeifer and Deputy Wale attended that high school together at the same time. Defense counsel argued that if he had known that Pfeifer was friendly with any of the witnesses, he would have stricken him.
Defense counsel said that he hoped the court would interview the juror and the officer to determine the extent of their relationship, and if the court found that a relationship existed, he requested that the court strike the juror. The prosecutor responded that she had learned that defense counsel had confronted Deputy Wale the day before and threatened him, and that she found that to be highly irregular. She said that Deputy Wale told her the day before that he did not know any of the jurors and did not recognize any of their names. She further stated that she welcomed an evidentiary hearing regarding this matter. Defense counsel insisted he did not threaten the officer and pointed out that the "Code" said he could talk to any witness concerning this case.
Defense counsel noted that he saw Pfeifer show Deputy Wale the peace sign and nod his head to say "hello" when Deputy Wale walked into court the day before. He also noted that afterwards, Pfeifer looked at the juror sitting next to him and that they had a conversation prior to Deputy Wale beginning his testimony.
The trial judge advised Pfeifer that he had some concern that he (Pfeifer) and Deputy Wale had some type of relationship. Pfeifer stated that he knew Deputy Wale as a teenager when Deputy Wale went to St. Charles High School. He stated that he and Deputy Wale did not go to high school together; that he (Pfeifer) had gone to East St. John High School, and that Deputy Wale had gone to St. Charles High School.
Pfeifer explained that he remembered seeing Deputy Wale with other friends during his high school days. He said that he had once read in the newspaper that Deputy Wale had gotten stabbed in the neck and cut in the head while working as a police officer. He said that someone else had pointed that out to him, and that he might not have even remembered Deputy Wale otherwise.
Pfeifer said that he did not remember Deputy Wale's name when it was called out during the reading of the witness list, but that he remembered Deputy Wale's face when the deputy came into the courtroom. Pfeifer stated that after his high school days, he might have seen Deputy Wale in passing at a store. He explained that he was 25-years-old, and that he had not seen Deputy Wale in the past year. He said that they were not friends, that Deputy Wale was not part of his "intimate circle", and that he just knew Deputy Wale through people from his high school days.
The trial judge thanked Pfeifer for his candid responses and said he had no reason to disbelieve what he (Pfeifer) had told him. He told Pfeifer not to discuss what they had talked about with anyone until the end of the trial. Defense counsel *643 asked the trial judge to ask Juror No. 3 whether Pfeifer had communicated to him that he had knowledge of this witness. The trial judge refused.
Afterwards, the trial judge asked Deputy Wale whether he had any knowledge of Pfeifer. Deputy Wale explained that there was "one face" that looked familiar but he did not know his name, and that that person was a white male on the front row two or three persons down. The trial judge told him that that was the juror they were focusing on, and he asked the deputy whether any relationship at all existed between that juror and himself. Deputy Wale responded that he did not have any relationship with that juror.
Deputy Wale said he went to St. Charles High School for two-and-a-half years, but graduated from East St. John High School where he went to school for one year. Deputy Wale explained that he had seen Pfeifer's face before, but he was not sure where or when. He added that he had not talked to Pfeifer in the last 24 hours. The trial judge then told Deputy Wale not to discuss this matter with anyone for the next 24 hours, until the trial had ended.
Following Deputy Wale's testimony, the trial judge allowed Pfeifer to remain on the panel, stating:
My finding is not a very mysterious finding. I thank Mr. Hawkins (defense counsel) for bringing this to our attention, but upon questioning both of these people, one juror and one witness, I don't believe it rises to the level that gives me enough concern to strike the juror. Had more egregious activity or a more solid relationship had (sic) been established I certainly would have taken steps appropriate and that may have included striking a juror. I don't believe that the prejudice here is great enough that I take steps in the middle of a jury trial, which is a very, very, very strong step to take during the middle of a jury trial. So at this time I'm going to let Juror No. 4 remain on this panel.
Defense counsel objected to the court's ruling and stated that he would have stricken Pfeifer had he known that the slightest relationship with Deputy Wale existed, just like he had done with other potential jurors.
On appeal, defendant argues, in effect, that the trial court abused its discretion by denying his challenge of Pfeifer for cause.
The grounds for a challenge for cause are set out in LSA-C.Cr.P. art. 797, which provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
In State v. Holland, 544 So.2d 461, 465 (La.App. 2 Cir.1989), writ denied, 567 So.2d 93 (La.1990), a case involving a challenge of a juror for cause during trial, the appellate court stated in pertinent part:
A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. State v. Jones, 474 So.2d 919, 926 (La.1985). Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship *644 is sufficient to preclude the juror from arriving at a fair verdict. State v. Peterson, 446 So.2d 815 (La.App. 2d Cir.1984). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. State v. Hodgeson, 305 So.2d 421 (La.1974).
In State v. Parker, 04-1017 (La.App. 5 Cir. 3/29/05), 901 So.2d 513, 524-526, the state moved to excuse a juror from the jury when it was learned after the guilt phase of the trial, but before the penalty phase, that the juror was the first cousin of one of the defense's mitigating witnesses. The juror admitted that the witness was his cousin, but stated that he had not spoken to him in nine months; however, he assured the court that he would not be affected by this. The trial judge refused to strike the juror for cause unless there was a joint motion. Defendant did not join in the motion but rather moved for a mistrial, stating that because of the juror's criminal record, questions regarding his mental health, his relationship with the defense witness, and the fact that he knew the victims, he should never have been on the jury.
This Court found that the record did not reveal sufficient grounds to disqualify the juror and did not indicate that defendant suffered any prejudice or did not receive a fair trial. This Court noted that defendant could not complain that he was prejudiced during the guilt phase because the juror did not know at that time that his cousin would be a mitigating witness for defendant. This Court further noted that defendant was not prejudiced during the penalty phase because he received a life sentence and not the death penalty. Parker, 901 So.2d at 525.
In State v. Celestine, 2000-2713 (La.App. 4 Cir. 2/13/02), 811 So.2d 44, 49-50, writ denied, XXXX-XXXX (La.4/25/03), 842 So.2d 391, defendant complained that the trial court erred in failing to grant his motion for a new trial based on the fact that an empaneled juror failed to disclose that he knew the victim's family. The appellate court concluded that the empaneled juror's failure to disclose that fact was not prejudicial, and thus, defendant was not entitled to a new trial. The appellate court noted that the empaneled juror did not realize he knew the victim until the penalty phase of the trial, that the empaneled juror made the trial court aware that he knew the victim as soon as he realized it, and the empaneled juror voted to give defendant life imprisonment rather than the death penalty. Id.
In State v. Miller, 95-857 (La.App. 3 Cir. 1/31/96), 670 So.2d 420, 426-427, defendant argued that the trial court erred in refusing his request to remove a juror and replace her with an alternate when that juror admitted she was contacted during trial and advised she was related to the victim and the juror later was named as foreperson. The appellate court concluded that the trial court did not abuse its discretion in refusing to remove the juror because the juror did not personally know the victim, she did not know of the relationship prior to the phone call, and she informed the trial court that this would not affect her verdict. Id. at 427.
In State v. Peterson, 446 So.2d 815, 817-818 (La.App. 2 Cir.1984), defendant contended that the challenge for cause to a prospective juror should have been allowed because of that juror's friendship with a state's witness. The appellate court found that, under the circumstances, it could not say that the trial court abused its discretion in failing to sustain this challenge. It noted that the extent of the relationship was not explored, that apparently they were not good friends, and that the juror *645 testified that he could be fair and impartial.
In the instant case, we find that the trial court did not abuse its discretion in refusing to exclude Pfeifer for cause. After thorough questioning of both Pfeifer and Deputy Wale, it was learned that there was no relationship between the two and, in fact, although the deputy recognized the juror's face, he could not recall where or when he had seen it. Additionally, it does not appear that the relationship was sufficient to preclude the juror from arriving at a fair verdict, nor does it appear that the tenuous connection between Pfeifer and the deputy would influence the juror in arriving at a verdict.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P.art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals two errors in this case.
The trial court failed to observe the twenty-four-hour delay between denial of defendant's motion for new trial and sentencing, as required by LSA-C.Cr.P. art. 873. Although LSA-C.Cr.P. art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least twenty-four hours after denial of post-trial motions, where no objection has been raised regarding the sentence imposed and there is no showing or suggestion that defendant was prejudiced by the failure to observe the delay, judicial efficiency dictates that the appellate court need not follow the formality of remanding for reimposition of a sentence which has not been challenged. State v. Stone, 05-82, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 810, citing State v. White, 404 So.2d 1202, 1204 (La.1981). Here, defendant has not challenged the sentence nor showed that he suffered any prejudice as a result of the failure to waive the twenty-four-hour delay. Accordingly, no action need be taken. Stone, supra.
The trial judge advised defendant of the prescriptive period for applying for post-conviction relief as follows:
... Mr. Morris certainly has the right to file a petition for post conviction relief, if he wishes to challenge any of the administrative portion of this hearing or the trial or any hearing he was subject to throughout this prosecution. However, he is subject to the two-year window. No such application will be considered if it is filed after two year (sic)  after the judgment and sentence have become final...
The trial court's advisal appears to be unclear. Therefore, we remand this matter to the trial court so it can properly inform defendant of the prescriptive period for applying for post conviction relief pursuant to LSA-C.Cr.P. art. 930.8 by sending defendant written notice within ten days of the rendition of the opinion and by filing written proof in the record that defendant received such notice. State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 951.
Accordingly, defendant's conviction of possession of a firearm by a felon is affirmed. This matter is remanded for correction of an error patent.
CONVICTION AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Art. 851. Grounds for new trial

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.
[2] State v. Prieur, 277 So.2d 126, 128 (La.1973).