765 So.2d 438 (2000)
STATE of Louisiana
v.
Sidney J. MARTS.
No. 98-KA-0099.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 2000.
*439 Harry F. Connick, District Attorney Of Orleans Parish, Jeffrey W. Davidson, Assistant District Attorney Of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sidney J. Marts, Louisiana State Penitentiary, Angola, LA, in proper person, Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge MOON LANDRIEU, and Judge PATRICIA RIVET MURRAY).
MURRAY, Judge.
On July 23, 1996, Sidney J. Marts was convicted by a jury of purse snatching, a violation of La. R.S. 14:65.1. On February 17, 1998 he was adjudicated a third felony offender and was sentenced to life imprisonment *440 under La. R.S. 15:529.1. He now appeals pro se, specifying 31 assignments of error. We reverse the conviction, vacate the sentence, and remand for a new trial for the reasons that follow.

FACTS and PROCEEDINGS BELOW
On the evening of February 22, 1995, as the annual Carnival season was getting underway, the New Orleans Police Department had deployed a contingent of undercover officers into the parade crowds to detect and deter crimes, such as pickpocketing and the carrying of concealed weapons. As a part of that task force, Detective Thelonius Dukes and Officer Tyronne Martin were mingling among the paradegoers in the first block of St. Charles Avenue, just off Canal Street. Soon after the parade began, the officers noticed Mr. Marts in the crowd and began watching him as he talked with another man and a woman. Shortly after 9:00 p.m., Det. Dukes observed Mr. Marts stoop down, as if to pick up some beads, to the right side of a man who was being pushed against the police barricade by Mr. Marts' two companions. As Mr. Marts stood up, Det. Dukes saw him press his right hand against the man's front pocket, then remove the man's wallet with his left hand.
Both Det. Dukes, who was about five feet away, and Off. Martin, who was standing slightly further away, observed Mr. Marts pass the wallet to his male companion as they began to leave the scene, joined by the woman. When the police moved in on them, the man threw the wallet to the ground, pointing to Mr. Marts and saying it was his. All three were arrested, given Miranda warnings, and taken to the Vieux Carre police station. Det. Dukes located the victim, Dale Stopp, a tourist from California, who accompanied the officers to the police station.
Mr. Stopp testified that when a float stopped just in front of him, he was somehow pushed from behind into the metal police barricade, but he was not then aware of any particular individual(s) or of any deliberate shoving. Feeling that he might be pushed over the barricade, Mr. Stopp was struggling to regain his balance when he noticed Mr. Marts to his left, bent down near his left foot but looking up and smiling at him. Mr. Stopp righted himself "and made sure everything was in order," then checked his right front pocket and discovered his wallet was gone.
Mr. Stopp told his wife what had happened, then began looking for a policeman to report his loss. Within minutes, a man approached Mr. Stopp and questioned him briefly about his identity, then asked if his wallet was missing. The undercover officer identified himself and confirmed that the wallet belonged to Mr. Stopp, then briefly described what the police had seen. Mr. Stopp, his wife and the couple that was traveling with them went to the police station, where the wallet and its contents four credit cards, a drivers license, an employment ID card, and less than $100 cashwere photocopied, then returned.
Mr. Stopp testified that earlier that evening he had spoken briefly to the second man, Kurt Massey, but the only time he saw Mr. Marts was when he was stooping down near his feet. He said he had not seen the woman, Stephanie Joseph, until after the policeman had explained what had happened and was escorting everyone to the police station. Mr. Stopp made it clear that he neither saw nor felt anyone stealing his wallet, but discovered it missing just after seeing Mr. Marts bent over next to his foot.

ARGUMENTS and DISCUSSION

ERRORS PATENT
We have detected one patent error in the sentence imposed, which is also assigned as error in defendant's supplemental brief.
Mr. Marts was adjudicated a third felony offender based upon his prior convictions for possession of stolen property in February 1987 and for attempted *441 purse snatching in December 1987. At the time of his sentencing in 1998, the latter conviction qualified him for life imprisonment under R.S. 15:529.1 A(1)(b)(ii), as amended by 1995 La. Acts 1245, § 1. However, the instant offense was committed in February 1995, when § 15:529.1 provided in pertinent part as follows:
A.(1)(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and each of the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit or parole, probation, or suspension of sentence.
* * * * *
G. Any sentence imposed under the provisions of this Section shall be without benefit or probation or suspension of sentence.
(Emphasis added). Thus, under the version of the statute that was in effect at the time Mr. Marts committed the instant offense, he was not subject to the sentence enhancement specified in Subsection A.(1)(b)(ii) because one of his three felonies, possession of stolen property, is neither defined as a crime of violence nor is a violation of controlled substances laws.
We agree with the Fifth Circuit's determination, in State v. Robinson, 97-269, pp. 8-12 (La.App. 5th Cir.5/27/98), 713 So.2d 828, 831-32, writ denied, 98-1770 (La.11/6/98), 727 So.2d 444, that the imposition of a harsher sentence than that prescribed at the time the offense was committed constitutes a violation of the Ex Post Facto clauses of both the federal and state constitutions. See also State v. Ballay, 97-1749, pp. 3-4 (La.App. 4th Cir.1/13/99), 727 So.2d 1199, 1201, writ denied, 99-0437 (La.6/18/99), 745 So.2d 18 (applying R.S. 15:529.1 as it read at the time of the offense for which sentence was being enhanced). Therefore, if the re-trial ordered in this case again results in a conviction and multiple bill, the sentence imposed must be within the limits specified in the version of La. R.S. 15:529.1 A(1) in effect in February 1995.

RIGHT TO COUNSEL
Mr. Marts represented himself in the court below as well as in this appeal. He now contends that his conviction must be reversed because there was no valid waiver of his constitutional right to the assistance of an attorney.
At his arraignment on March 31, 1995, Mr. Marts announced that he was going to represent himself. When the court initially rejected this request, Mr. Marts asked for time to file for supervisory writs to this court. The judge cautioned the defendant about "listening to them jailhouse lawyers in there," but Mr. Marts replied that he had proceeded pro se in another case in which he had recently been found not guilty, and made it clear that he wished to exercise his right to self-representation. The court acknowledged that Mr. Marts had that right, but cautioned him about doing so in this case "[b]ecause you're facing ten to forty years in here." After Mr. Marts again stated his intention to seek supervisory writs on the issue, the judge said, "No, you don't have to. I am going to let you represent yourself, and I am going to have a lawyer sit alongside you." The court then appointed an indigent defender to assist in the district court proceedings.
*442 Mr. Marts now contends that his waiver of counsel was not knowing and voluntary because he was not questioned about his age, background and education, nor was he specifically advised of "the pitfalls of self-representation at trial" as stated in State v. Mahogany, 96-1137, pp. 2-3 (La.App. 4th Cir.4/30/97), 694 So.2d 505, 507, writ denied, 97-1405 (La.11/7/97), 703 So.2d 33, and cases cited therein. He maintains that because the record thus fails to establish that he understood the significance of the waiver, his conviction must be reversed.
While the jurisprudence, such as Mahogany, has suggested factors to be considered when determining whether a waiver of counsel is made knowingly and intelligently, our Supreme Court has explicitly held that such cases "did not thereby establish inflexible criteria or a magic word formula for determining the voluntariness of a waiver. The inquiry... must take into account the totality of the circumstances in each case." State v. Stevison, 97-3122, p. 2 (La.10/30/98), 721 So.2d 843, 844-45 (citations omitted).
Unlike the defendant in Mahogany, who waited until the day of trial to discharge his indigent defender, Mr. Marts declared from the outset that he wished to handle his case himself. Although the trial judge warned him of the lengthy jail term he was facing on this charge, Mr. Marts expressed confidence at his arraignment that his previous history and experience in the criminal courts adequately prepared him for self-representation. He was further cautioned about proceeding pro se on later occasions, but repeatedly rejected legal advice and attempts to assist him, not only from the indigent defender but from the court, his co-defendant's attorney and from the prosecutor.
The U.S. Supreme Court has made clear that an attorney cannot be forced upon a defendant who is competent to stand trial. As explained in Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540-41, 45 L.Ed.2d 562 (1975):
It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him.... The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."
(Citation and footnote omitted.)
In this case, as in Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, the record affirmatively demonstrates that Mr. Marts "clearly and unequivocally declared ... that he wanted to represent himself and did not want counsel .... [that he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will," both in making the initial waiver and in his continued rejection of a lawyer's assistance.
Furthermore, the record establishes that Mr. Marts did an admirable job of defending himself, both in urging his pretrial motions and in his objections and cross-examination at trial. Although some of his procedural challenges demonstrate that he was disadvantaged in this area, the substantive defense he has asserted throughout these proceedings evinces a clear comprehension of the basic principles of criminal law. In fact, as discussed below, Mr. Marts has asserted an error on appeal that entitles him to a new trial.
Therefore, notwithstanding the trial court's failure to engage in a detailed colloquy *443 regarding self-representation, we find that Mr. Marts made a knowing and valid waiver of his right to counsel, and that he was not substantially prejudiced as a result of the waiver. This assignment of error is without merit.

PRE-TRIAL ERRORS ASSIGNED
Mr. Marts claims that his right to a speedy trial was violated and that he was brought to trial without a determination of probable cause and without a ruling on his motion to suppress evidence.
The conduct for which Mr. Marts was prosecuted occurred on February 22, 1995, the bill of information was filed March 28, 1995, and he was tried on July 22-23, 1996. Accordingly, there was no violation of the statutory limitations for either the institution of prosecution or for trial. La.Code Crim. Proc. arts. 572, 578. Additionally, the record shows that on at least three occasions, Mr. Marts refused to proceed at the hearings on his motions for a preliminary examination and to suppress evidence, yet he objected to any further continuance of the trial date.[1] Therefore, the district court did not abuse its discretion in proceeding to trial without a formal ruling on these motions. Furthermore, it is evident from the trial transcript that probable cause existed for the arrest and prosecution, and that there was no basis for suppression of the only evidence admitted at trial, Mr. Stopp's wallet. These assignments of error are meritless.

SUFFICIENCY OF THE EVIDENCE
Throughout the course of these proceedings, Mr. Marts has asserted that the conduct for which he is being prosecuted constitutes, at most, "a misdemeanor theft by pickpocket." In this appeal, he argues that because the uncontradicted testimony establishes that Mr. Stopp did not detect the removal of his wallet from his pocket, an essential element of the crime of purse snatching, i.e., the "use of force, intimidation, or by snatching," was not proven. Mr. Marts further claims that because purse snatching is listed among the crimes of violence in La. R.S. 14:2(13), the State had to prove that his conduct was the type that "by its very nature, involves a substantial risk that physical force against the person or property of another may be used," as defined in the statute. In essence, he contends that the evidence was insufficient to establish that he was guilty of all elements of the crime of purse snatching.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992). The reviewing court is to consider the evidence as a whole, not just that favorable to the State, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict must be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the appellate court is not called upon to weigh the evidence, nor to decide whether it believes the witnesses. Id. All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Hearold, supra.
La. R.S. 14:65.1 A provides:
Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
(Emphasis added.) As the Supreme Court made clear in State v. Anderson, 418 So.2d 551 (La.1982), this wording establishes that the "snatching" element is separate *444 and apart from any "use of force" or "intimidation." Thus, the State need only show that force OR intimidation OR snatching was used to accomplish the theft of something of value from a wallet or purse that is within another's immediate control or on their person.
In Anderson, sufficient evidence of a purse snatching was found where the victim testified only that she felt a vibration, then noticed that her purse was no longer on the floor by her feet. Similarly, in State v. Capote, 474 So.2d 497 (La.App. 4th Cir.1985), this court held that even though the victim did not feel her purse being removed from the back of her chair, the theft constituted purse snatching because the statute does not require a face to face confrontation, but only a taking from the area within the victim's control. Under facts more similar to those presented here, a purse snatching conviction was upheld in State v. Spurlock, 539 So.2d 977 (La. App. 4th Cir.), writ denied, 544 So.2d 399 (La.1989), where a security guard observed the defendant remove a wallet from the victim's purse without her knowledge of the theft. More recently, in State v. Neville, 96-0137 (La.App. 4th Cir.5/21/97), 695 So.2d 534, writ denied, 97-1637 (La.12/12/97), 704 So.2d 1180, although the victim did not see or feel the defendant take her wallet from her purse, she saw him walking off with it, which was sufficient to support the defendant's conviction for purse snatching.[2]
Under this jurisprudence, it was not necessary for the State to present direct evidence concerning either the amount of pressure used to remove Mr. Stopp's wallet or the relative speed at which Mr. Marts accomplished its removal. Instead, Det. Dukes' description of what he observed was sufficient to support the reasonable inference that Mr. Marts applied some degree of force against Mr. Stopp in order to "snatch" the wallet from Mr. Stopp's pocket. Accordingly, a rational trier of fact could find Mr. Marts guilty, beyond a reasonable doubt, of each of the essential elements of purse snatching. This assignment of error is without merit.

RESPONSIVE VERDICTS
Mr. Marts asserts that under these facts, the trial court's failure to include theft as a responsive verdict, and to instruct the jury on the statutory definition of this crime, was reversible error. We agree.
In this case, Mr. Marts requested, in advance of trial, that the jury be charged as to the statutory definition of theft and that it be included as a responsive verdict. However, the court refused these requests, and charged the jury that the only responsive verdicts were guilty of purse snatching, guilty of attempted purse snatching, and not guilty. Mr. Marts objected at the end of the jury charge to the court's failure to include theft as a responsive verdict, and re-urged his objection when the jurors interrupted deliberations to specifically ask about the crime of "pickpocketing." Therefore, the issue was timely preserved for consideration in this appeal. La.Code Crim. Proc. art. 841.
Criminal Procedure article 803 sets out the mandatory responsibility of the trial court concerning jury charges:
When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense.
Because Article 814 does not specify the responsive verdicts for purse snatching, Article 815(2) required the inclusion of "a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor." Lesser and included offenses are those in *445 which all essential elements of the lesser crime are also essential elements of the greater charge, such that evidence sufficient to support a conviction of the charged offense necessarily supports conviction on the lesser offense. State v. Porter, 93-1106, pp. 4-9 (La.7/5/94), 639 So.2d 1137, 1140-42.
As previously noted, La. R.S. 14:65.1 defines purse snatching as a "theft ... by use of force, intimidation, or by snatching." La. R.S. 14:67 A defines theft as:
[T]he misappropriation or taking of any-thing of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Thus, all essential elements of the crime of theft are included in the crime of purse snatching: (1) the theft, (2) of anything of value contained within a purse or wallet at the time of the theft, (3) from the person of another or which is in the immediate control of another, (4) by use of force, intimidation, or by snatching, i.e., without the consent of another. As such, theft is clearly a lesser and included offense of purse snatching. See State v. Randel, 573 So.2d 616, 619 (La.App. 2d Cir.1991) ("Theft is an essential element of purse snatching....").
Thus, under the facts presented here, the jury should have been allowed to consider, and should have been instructed on, the possible verdict of "guilty of theft." State v. Porter, supra. Unlike purse snatching, the sentencing range for theft varies depending on the value of the property taken,[3] and theft is not a crime of violence that necessitates a more severe penalty for a multiple offender. Therefore, the trial court's error was highly prejudicial, and necessitates that the matter be remanded for a new trial.
We pretermit discussion of the remaining assignments of error.

CONCLUSION
For the reasons assigned, Mr. Marts' conviction for purse snatching is reversed and his sentence is vacated. The matter is remanded for a new trial.
CONVICTION REVERSED; SENTENCE VACATED; REMANDED FOR NEW TRIAL.
NOTES
[1] Mr. Marts contended that because he had a right to confront his accuser, it was necessary for the victim to be present at the hearings on his motions.
[2] Mr. Marts claims that because these cases were wrongly decided under the statutory language, his rights under the federal and state constitutions have been violated by all those participating in this prosecution. We find no merit to this claim.
[3] As previously noted, Mr. Marts argues that he should have been charged only with misdemeanor theft because there was less than $100 cash in the wallet. However, the determination as to the value of the property taken, including the contents, is a question of fact for the jury. See State v. Harris, 97-0778 (La.3/4/98), 708 So.2d 387.