JUDE G. GRAVOIS, Judge.
|2Pefendant Steven H. Harrche appeals his conviction for purse snatching, in violation of LSA-R.S. 14:65.1. On appeal, he argues that the evidence was insufficient to support the verdict as charged, but rather supports the lesser and included offense of theft. For the following reasons, we affirm.

PROCEDURAL HISTORY

The Jefferson Parish District Attorney filed a bill of information that charged defendant, Steven H. Harrche, with purse snatching in violation of LSA-R.S. 14:65.1. Defendant pled not guilty to this charge at his arraignment on June 24, 2009. The trial court denied defendant’s motion to suppress his statement on February 2, 2010. Thereafter, defendant proceeded to trial on May 19, 2010. On the following day, a six-person jury found defendant guilty as charged.
|sOn June 25, 2010, defendant filed a Motion in Arrest of Judgment and Alternatively Motion for New Trial, claiming that the evidence presented at trial did not support his conviction for the offense charged. The trial judge denied the motion for new trial, explaining that he had listened to the evidence presented and did not agree with the argument that the evidence did not support the conviction. Defendant objected. Defendant was sentenced to four years imprisonment with the Department of Corrections. Defendant’s appeal followed.[1]

FACTS

On May 2, 2009, a Saturday evening, Mary Ann Wegmann went grocery shopping at the Winn Dixie supermarket at 5901 Airline Drive in Metairie. After completing her shopping, she was unloading groceries from her shopping cart into her SUV in the parking lot when someone took her purse from the top of the shopping cart.
Detective Kevin Balser of the Jefferson Parish Sheriffs Office spoke to Ms. Weg-mann on the telephone and was able to develop additional information about the perpetrator. She told him that the perpetrator was possibly a Hispanic male with a “ruddy” complexion, was unshaven, and had a ponytail. Detective Balser also spoke with Nathaniel Castillo, who had witnessed the perpetrator running away with the victim’s purse and observed the perpetrator enter a vehicle. Mr. Castillo was able to describe the vehicle as a late 1990’s Buick four-door blue car with a license plate that contained the letters “DL” or “D-V” and was followed by numbers that included a “four” and an “eight.” He also observed a white, heavyset |4male in the vehicle as well as another person seated in the front passenger seat of the vehicle.
On May 4, 2009, two days after the incident, Detective Balser and his partner, Detective Cedric Grey, decided to go in separate, unmarked vehicles and canvass the Winn Dixie area, which included hotels known for criminal activity. Detective Balser testified that in about the 4700 *863 block of Airline Drive, he observed a 1999 blue, four-door, Buick LeSabre with the license plate number “DV 2485.” Detective Balser notified his partner and they conducted an investigatory stop of the vehicle. The vehicle was occupied by the driver, a white heavyset male who was identified as Keith Gilmore, and defendant, who was seated in the front passenger seat. Detective Balser testified that he did not expect to find the vehicle, but agreed it may have been luck.[2]
After stopping the vehicle, the detectives identified themselves as robbery detectives with the Jefferson Parish Sheriff Office and explained that they were investigating a robbery. Gilmore and defendant were verbally advised of their Miranda[3] rights and both agreed to go to the Detective Bureau for questioning. Detective Balser testified that defendant told him he was staying in Metairie in a motel at 4231 Airline Drive. The motel was not far from where defendant was stopped. Detectives Balser and Grey went to the motel and spoke with a white female who identified herself as “Nicky Fiorella,” but was later determined to be Lonnie Stanley. After being advised of the investigation, she consented to a search of the motel room. Nothing of evidentiary value was found in the room.
Defendant, Gilmore, and Stanley were transported to the Detective Bureau. Detective Balser filled out a rights of arrestee or suspects form with defendant and 1.^defendant initialed and signed the form, which advised him of his Miranda rights. Detective Balser interviewed defendant, who divulged information about his participation in the purse snatching and gave a recorded statement. This recorded statement was played for the jury.
In this statement, defendant said that “When I snatched the purse, I took off running.” He said he had been dropped off at the parking lot of Winn Dixie in the same blue Buick car he was stopped in. He said the car belonged to Keith. He said Nicky Fiorella[4] and Keith were in the car when they dropped him off. He confirmed Nicky was staying with him in his motel room on Airline. He said it was his idea to go to Winn Dixie because he needed money to pay for a motel room, and this was the easiest way to get the money. He named the cross street by Winn Dixie as Elise Street. He said he got into the passenger’s side rear door of the car, Keith was driving, and Nicky was sitting in the front passenger seat. Defendant said “I grabbed the purse out the buggy and ran.” He explained that the woman was putting her groceries in the car. He said he did not see her face and knew she had not seen his. He recalled that the purse was black and said he went through it and found money and change. He said that $50.00 was found in the purse, and the money was used to pay for the motel room, which cost $45.00. He said the money was found inside of a bank envelope. He did not recall where the purse was at the time.[5]
Defendant, Gilmore, and Stanley were all arrested in this matter. Neither Ms. Wegmann nor Mr. Castillo was able to *864 make an identification of the perpetrator after being presented with a photographic lineup that included |6defendant’s photograph.[6] Video surveillance footage of the Winn Dixie parking lot was obtained and played for the jury.
Ms. Wegmann testified that she went to the driver’s side of her vehicle to unload her groceries into her backseat. She then had to unload a watermelon, so she pushed her cart to the passenger side of her vehicle and opened the door to get to her backseat. She explained that her purse was by her side in the top section of the shopping cart, where a baby would be seated. Right after unloading the watermelon, however, she noticed her purse was gone. She saw the perpetrator running away from her vehicle with her purse. She chased him, but did not catch him. He was running towards Elise Street, a side street next to the Winn Dixie. She testified that he got into a getaway car that was on Elise Street, facing away from Airline Drive. She testified that she was able to give a general description of the car, but that it was hard to see the numbers on the license plate. She testified that the getaway vehicle was consistent with the vehicle depicted in State’s Exhibit 1. She also testified that she was able to give the detective a description of the perpetrator, who had a dark, brownish ponytail and a tan-colored complexion. She was unable to make an identification after viewing a photographic lineup presented to her.
Ms. Wegmann testified she had a wallet, coins, money, credit cards, a checkbook, several gift cards, at least two pairs of sunglasses, and her driver’s license in her purse. She explained that she also had between $50.00 and $100.00 in a bank envelope that was in her purse. She said that her purse itself was worth approximately $100.00. She estimated that her purse and everything in it was worth between $700.00 and $1,000.00. She explained that she realized after giving 17her statement that she had lost more than she initially believed. She was forced to cancel bank accounts and credit cards and had to obtain a new driver’s license. She testified that nothing was ever found or recovered. She also testified that no one had permission to run off with her purse from the Winn Dixie parking lot.
Nathaniel Castillo testified that on the afternoon of the incident, he was sitting down eating his lunch on the parking curb at the Winn Dixie when he heard a woman scream that someone had taken her purse. He got up and noticed the perpetrator running. The perpetrator was carrying a lady’s purse, and the victim was screaming and chasing him. Mr. Castillo chased the perpetrator and was approximately three feet from him when he got into the getaway vehicle, which sped off. He testified that he focused on the license plate of the vehicle, which he believed to be a “different kind of license plate” and noticed the letters and numbers on the plate were blue. He recalled two letters, which he believed were “D-L” and then four digits, which he believed contained a “four” and an “eight.” He also noticed the car was blue. Mr. Castillo testified that the perpetrator was a little shorter and thinner than he was and had olive skin and blackish hair. He testified that he could not make an identification because the photographs contained individuals with such similar characteristics. He acknowledged that the description he gave to the officers was consistent with a general description of *865 defendant. He identified the getaway car as the car depicted in State’s Exhibit 1.

ASSIGNMENT OF ERRORr-Sufficiency of the evidence

In his only assignment of error, defendant argues the evidence was insufficient to support his conviction of purse snatching, and at most, the evidence only showed the crime of theft. Defendant admits that his identity was never at issue. However, he claims that the purse was not on the victim’s person and was |snot in her immediate control, but instead was in a grocery cart, which was steps away from her. He contends that the purse was taken while her back was turned and she was placing an object into her vehicle. Defendant asks that this Court set aside the verdict of purse snatching, vacate the sentence imposed, enter a verdict for the responsive charge of theft, and remand the matter for resentencing.
The State responds that it not only had the option of charging defendant with purse snatching, but that it correctly charged defendant. The State suggests that the grocery cart and purse were still in the victim’s immediate control at the time the purse was snatched, and therefore, the jury verdict was correct. The State also contends that the jury was instructed as to the responsive verdict of theft and chose not to return the lesser verdict.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184.
[ 9“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).
Defendant was convicted of purse snatching. LSA-R.S. 14:65.1(A) provides as follows:
Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the *866 person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator. See State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Defendant does not challenge identity in this case. Instead, he argues that the purse was not on the victim’s person or in her immediate control, and therefore, the State only presented evidence of theft.
The Supreme Court has held that “ ‘snatching’ ” does not require an actual face-to-face confrontation, and is distinguished from “ ‘use of force’ ” and “ ‘intimidation’ ” by the statute’s very wording. State v. Anderson, 418 So.2d 551, 552 (La.1982). The State need only show that force or intimidation or snatching was used to accomplish the theft of something of value from the purse that is within the immediate control or on the person. State v. Boss, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 78 (emphasis as found in decision), writ denied, 03-1968 (La.5/14/04), 872 So.2d 508. LSA-R.S. 14:65.1 does not require that the victim know at the time of the taking that his or her property is taken or snatched. State v. Smith, 07-2028, p. 11 (La.10/20/09), 23 So.3d 291, 298 n. 3 (per curiam). It remains possible in Louisiana to “snatch” a victim’s purse from her possession without her awareness at the time of the taking. Id.
In Anderson, supra, sufficient evidence of a purse snatching was found where the victim testified only that she felt a vibration, then noticed that her purse was no longer on the floor by her feet. In State v. Capote, 474 So.2d 497 (La.App. 4 Cir.1985), the court held that even though the victim did not feel her purse being removed from the back of her chair, the theft constituted purse snatching, recognizing that no face-to-face confrontation was required. The court found sufficient evidence to support the purse snatching conviction.
In State v. Pierre, 04-0010, p. 1 (La.App. 4 Cir. 2/25/04), 869 So.2d 246, 247, the defendant was found guilty of attempted purse snatching. On appeal, the defendant argued there was insufficient proof that his actions constituted attempted purse snatching when there was no evidence offered that the purse contained anything of value or that it was taken from the victim’s immediate control. Pierre, 04-0010 at 3-4, 869 So.2d at 248-49. The victim in Pierre testified that when her purse was taken it was right next to the cash register where she had been standing until the defendant pushed her aside, Pierre, 04-0010 at 4, 869 So.2d at 249. The court found that the evidence was sufficient to show that the defendant “snatched” Inthe purse, noting that the victim saw the defendant with her purse, which seconds before had been in her immediate control. The court found that “[s]uch is adequate evidence even if he merely picked it up from the counter.” Pierre, 04-0010 at 5, 869 So.2d at 249.
In Boss, 848 So.2d at 76, the defendant challenged the sufficiency of the evidence used to convict him of purse snatching. In Boss, while grocery shopping, the victim placed her purse in the top compartment of the grocery cart and walked to the dairy case, while pushing the cart. She parked the cart and stepped about three feet away from it to retrieve milk. When she returned to her cart, her purse was missing, and she observed someone proceeding through the grocery aisle with her purse *867 on his shoulder. She screamed and began to chase him through the store. The suspect dropped the purse at the store entrance and ran into the parking lot. Id.
In Boss, the Jefferson Parish District Attorney filed a bill of information charging the defendant with theft of goods, but shortly before trial, the State amended the bill of information to reflect a purse snatching charge. The defendant was found guilty as charged after a bench trial. Id. at 76-77. On appeal, the defendant argued that the State failed to prove an essential element of the crime of purse snatching and argued that the matter should have been considered a theft. Id. at 77. This Court recognized that the District Attorney has the sole discretion to choose under which law he will prosecute. Id. This Court also determined that even though there was no eyewitness to the “snatching,” it found that the State proved by circumstantial evidence the essential elements of the purse snatching offense beyond a reasonable doubt. This Court recognized that prior to the victim finding her purse missing, the victim had her purse, which contained things of value, and it was in her immediate control. This Court noted that the victim turned away to retrieve some milk and in the length of time that it took to do that her |12purse was gone. This Court further recognized that the victim immediately spotted the defendant with her purse in his possession as he attempted to flee the store. Another witness saw the defendant running through the store with the purse on his arm as well. This Court concluded that the evidence was sufficient to sustain the purse snatching conviction. Id. at 78.
In the present case, the State presented sufficient evidence to prove that the purse was in the victim’s immediate control when it was “snatched” from the shopping cart. Mr. Castillo was asked if he saw the purse being removed from the place it was to the perpetrator’s hand. He responded that he had not. As such, his testimony does not shed any light as to the issue at hand. However, the victim’s testimony does. Ms. Wegmann testified that her purse was taken when her back was turned. She was asked how far away she was from her purse when she was putting the watermelon into her vehicle. She answered, “[i]t was close. It was in the top basket which was right by my side.” She was then asked if she could have reached over and grabbed her purse, and she responded that she could have. She admitted that there was no physical contact between her and the perpetrator.
In defendant’s statement, he said the victim was in her car when he grabbed the purse. He was then asked, “She was by her car or she was sitting in the car?” Defendant answered “She was putting her groceries in the car.”
As such, the State presented evidence that the victim was near her purse that was in the cart when she turned away to load a watermelon into her vehicle. Prior to loading the watermelon, she had unloaded her other groceries into the backseat of her vehicle on the driver’s side. She then moved her cart which contained her purse to the other side of her vehicle to load the watermelon. She agreed that she was close enough to her purse that she could have grabbed it. It appears that she turned her back only momentarily. Her testimony suggests that she noticed her | 13purse was missing immediately and saw the perpetrator running away from her vehicle with her purse. She then chased him. The jury chose to believe her testimony.[7]
*868 It is noted that defendant presented this issue in his closing argument to the jury, explaining that he believed the charge should have been theft instead of purse snatching. Further, the jury instructions included responsive verdicts of theft. The jury obviously rejected this argument as evidenced from its verdict of guilty as charged of purse snatching. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime, including that the purse was snatched while it was in the victim’s immediate control, beyond a reasonable doubt. This assignment of error is without merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error was found that requires corrective action.
Although the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief, the transcript reflects an incomplete advisal. The transcript reflects that defendant was advised that he had “two years to file post conviction relief.”[8] The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, defendant is advised by way of this opinion that Upursuant to LSA-C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. State v. Arias-Chavarria, 10-116, p. 13 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 434, writ denied, 10-2432 (La.2/25/11), 58 So.3d 460.

CONCLUSION

Defendant’s conviction and sentence are affirmed.

AFFIRMED

. Defendant orally noted his intention to file a motion for appeal after he was sentenced on June 25, 2010. A written motion for appeal was filed on July 1, 2010, and was granted on July 6, 2010. Defendant was sentenced as a second felony offender on August 5, 2010. The motion for appeal was filed after his conviction and imposition of the original sentence but before imposition of defendant’s enhanced sentence. However, it appears any prematurity was cured by the subsequent re-sentencing of defendant as a multiple offender. See State v. Horton, 09-250, p. 4 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 373 n. 1; State v. Davis, 07-544, p. 3 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 63 n. 1, writ denied, 08-0380 (La.9/19/08), 992 So.2d 952.

. Detective Balser identified the vehicle he stopped as the vehicle depicted in the photographs that were presented at trial as State’s Exhibit 1, in globo.

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. It is noted that this person’s name is spelled differently in the transcript of defendant’s statement.

. Detective Balser testified that the transcription of the statement (State's Exhibit 3) accurately reflected the statement he received from defendant.

. Dawn Sueco (phonetic spelling from tran- . script) was also shown the photographic lineup, but was not able to make an identification. Detective Balser testified that she was a witness with whom he was unable to make contact.

. The credibility of witnesses is within the sound discretion of the trier of fact. State v. *868 Jones, 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id.

. The State notes this error patent in its response brief and suggests that this Court advise defendant of the prescriptive period by means of its opinion.