STATE OF LOUISIANA

VERSUS

CORY W. WALL

NO. 21-KA-716

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-6301, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 07, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

**AFFIRMED; REMANDED WITH INSTRUCTIONS**
    **FHW**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
   Honorable Paul D. Connick, Jr.
   Thomas J. Butler
   Monique Nolan
   Joshua K. Vanderhooft
   Matthew Whitworth

COUNSEL FOR DEFENDANT/APPELLANT,
CORY WALL
   Bertha M. Hillman

**WICKER, J.**

Defendant appeals his conviction for purse snatching in violation of La. R.S. 14:65.1. On appeal, defendant complains that the failure to include the responsive verdict of theft in violation of La. R.S. 14:67 is an error patent on the face of the record requiring reversal of his conviction. Because we find that defendant failed to request the responsive verdict or to object to the exclusion of the responsive verdict of theft at trial, we find that defendant has waived the issue for appeal.[1] Therefore, we affirm defendant's conviction and sentence.

Statement of the Case

On October 2, 2018, the Jefferson Parish District Attorney filed a bill of information charging defendant, Cory W. Wall, with one count of purse snatching in violation of La. R.S. 14:65.1. Defendant pled not guilty at his arraignment on January 25, 2019. On July 26, 2021, the State filed a "Motion for Special Jury Instruction and Incorporated Memorandum in Support," which the trial court granted.[2]

The matter proceeded to trial before a six-person jury on July 27, 2021. Defendant was found guilty as charged on that date and was subsequently sentenced to twenty years imprisonment at hard labor. On August 4, 2021, the State filed a multiple offender bill of information, to which defendant stipulated, alleging defendant to be a third-felony offender. On that same date, the trial judge vacated the original sentence and, pursuant to the plea agreement, resentenced

---

[1] Alternatively, defendant asks this Court to remand this matter for an evidentiary hearing on his claims of alleged ineffective assistance of counsel. We find that this assignment of error concerning ineffective assistance of counsel would be more appropriately asserted in a separate application for post-conviction relief and, thus, we decline to address that issue.

[2] In that motion, the State requested the following special jury instruction:

A snatching is a sudden seizure. Snatching does not require an actual face-to-face confrontation and snatching does not require that the use of force or intimidation be employed. The State need only show that force or intimidation or snatching was used to accomplish the theft of something of value from the purse that is within the immediate control of the person. There is no requirement that the victim know at the time of the taking that her property is taken or snatched.
*State v. Anderson,* 418 So.2d 551 (La. 1982); *State v. Fitch,* 17-614 (La. App. 5 Cir. 4/11/18), 244 So.3d 885.

defendant as a third-felony offender under La. R.S. 15:529.1 to twenty-five years imprisonment in the Department of Corrections.[3][4] This timely appeal followed.

Factual Background

This case involves a May 15, 2018 purse snatching that occurred in the parking lot of a Budget Saver in Jefferson Parish. Following the incident, a witness followed a vehicle believed to be associated with the offense while on the phone with a 9-1-1 dispatcher.

The victim, Sandy Cortez, testified at trial that her friend from work, David Dupre, drove her to the grocery store every Tuesday. She testified that in May 2018, Mr. Dupre drove her to the Budget Saver in Jefferson Parish and that she shopped inside the store by herself for approximately 15 minutes. Ms. Cortez testified that after she completed her shopping, she began loading her groceries in the back seat of Mr. Dupre's truck. She explained that because she had a lot of groceries to unload, she placed her purse on the passenger seat of Mr. Dupre's truck. She further explained that her purse was right next to where she was standing and that she could have grabbed the purse at any time.

Ms. Cortez recalled that, while she was loading the groceries into the truck, a man walking in the parking lot passed her from the "back" and the two greeted each other. She further recalled picking her head up shortly thereafter and seeing the same man pass by the truck again. Shortly thereafter, she noticed two women, who were on the "other side" from her, "hollering" that the man had her purse. She testified that she then looked down and noticed that her purse was missing.

Ms. Cortez testified that she spoke with police officers about the incident and told them that she did not see anyone take her purse. She explained that

_____

[3] The trial court also ordered the sentence to run concurrently with any other sentence defendant was presently serving.

[4] This Court has held that when the trial judge orders that a defendant is sentenced to the "Department of Corrections," the sentence is necessarily at hard labor. *State v. Jamison*, 17-49 (La. App. 5 Cir. 5/17/17), 222 So.3d 908, 909 n.2.

Detective James Chapman showed her a photograph and that she identified the person in the photograph as the person she saw in the parking lot who greeted her prior to the crime. Ms. Cortez also identified herself and her purse in a surveillance video from the Budget Saver on that day. She testified that her beige purse contained her Samsung Galaxy cell phone, a Michael Kors keychain, and her identity theft wallet, which contained $100.00 to $125.00 in cash, her credit cards, her ID, and lottery tickets.[5]

Mr. Dupre testified that in May 2018, he drove Ms. Cortez, who did not drive, to the Budget Saver on "Barataria and Lapalco" in Marrero. He stated that he stayed inside his GMC pickup while Ms. Cortez went inside to get groceries. At some point in time while he waited for Ms. Cortez to return, he saw a male individual walking in the parking lot. He first recalled seeing that individual pass by his truck while he was looking down and "fooling" with his phone. He described seeing the man for "maybe like a split second" and that the man waved to him. He testified that he saw the same individual several cars away from him about ten to fifteen minutes later. He testified that, at that time, he believed that the individual was looking for his vehicle.

Mr. Dupre testified that while Ms. Cortez loaded her groceries, at some point he looked up and stared at the women parked on the next row because he thought he recognized one of them. He indicated that one of the women got out of her car and tried to say something to him. Once he opened the door, the woman said, "That man just took that lady's purse." Then, Ms. Cortez also said to him, "That man just took my purse." Mr. Dupre denied seeing anyone running away from the vehicle. Mr. Dupre identified defendant as the individual he saw walking around the parking lot prior to the crime. He testified that he identified defendant

---

[5] Ms. Cortez testified that she did locate and retrieve her cell phone in the "Woodmere" subdivision.

because he "looked like" the individual walking in the parking lot but reiterated that he did not see the individual who took the purse.

Harlee Deluca testified that in May 2018, after getting coffee with her husband, the two drove through a parking lot that included the Budget Saver. While their vehicle was stopped, Ms. Deluca saw a man with a light-colored purse under his arm running fast through the parking lot. She stated that it appeared "like he just stole it." She described the individual as a tall black man of medium build wearing average, casual clothes. She confirmed that she was in the passenger seat of the vehicle, that it was daylight, and that her view of the man about 20 feet away was unobstructed.

Ms. Deluca testified that she and her husband followed the individual and observed him enter a silver Mercedes vehicle. She confirmed that the driver of the vehicle was the same person she saw running with the cream-colored purse and that there were no other occupants in the vehicle. Ms. Deluca testified that she decided to call 9-1-1 as she and her husband followed the individual. While on the phone with 9-1-1, Ms. Deluca and her husband followed the Mercedes onto Lapalco Blvd. towards the Lapalco Bridge. She later explained that while on Lapalco, there were two to three vehicles between her vehicle and the Mercedes. She stated that they were "held up" at a stoplight, and they decided not to follow the vehicle once they observed the Mercedes turn from Lapalco onto Paxton Street.

Sergeant Shane Taylor with the Jefferson Parish Sheriff's Office testified that on May 15, 2018, he was involved in an investigation regarding a reported purse snatching. He testified that the incident was reported in two 9-1-1 calls—the first call from an individual following the alleged perpetrator's vehicle and the second call from the Budget Saver on "Barataria and Lapalco." He testified that a

comment in the Tiburon report[6] indicated that the first caller who followed the vehicle described it as a silver Mercedes with a "black rag top" headed towards the Lapalco Bridge. The 9-1-1 caller advised the dispatcher that the vehicle turned right onto Paxton Street. Sergeant Taylor testified that the vehicle then "hit on the ALPR [Automatic License Plate Recognition][7]" on "Paxton and Spencer."[8] Sergeant Taylor testified that the vehicle's registration listed defendant, Cory Wall, as the owner of the silver Mercedes. Sergeant Taylor testified that he assisted in executing a search warrant for defendant's vehicle and residence and that the search occurred more than a week after the crime was committed. He denied that any items of evidence were recovered. In a photograph, he also identified defendant's vehicle as a silver Mercedes with a black convertible top. He confirmed that the vehicle and the first three digits of its license plate matched the description provided by the 9-1-1 caller.

Sergeant Taylor relayed that defendant did not admit to committing a purse snatching at the Budget Saver on May 15, 2018. He testified that, after he interviewed defendant, he had a "casual conversation" with defendant in his office. He testified that he showed defendant the still photographs from the Budget Saver's security footage and that defendant identified himself in the photographs as an individual in the parking lot. He later agreed that defendant did not identify himself as the individual who stole the purse.[9]

---

[6] Sergeant Taylor explained that the Tiburon report is a Jefferson Parish Sheriff's Office (JPSO) report that reflects information being entered into its electronic system when an initial 9-1-1 call is received, which is then relayed to patrol deputies that are on the dispatch channel. He explained that information is received by the call taker and then is sent to dispatch, which then "calls it out" to the patrol division over the radio.

[7] Sergeant Taylor explained that "ALPR" is an automated license plate recognition camera system that photographs license plates at different intersections. He further explained that the ALPR system captures pictures of vehicles in search of stolen vehicles and automatically runs license plate information through the state's office of motor vehicles' system.

[8] He indicated that a later comment on the report meant that a patrol deputy with the unit handling the initial call changed the signal from a "65P," which is a purse snatching, to a "62C," which is a vehicle burglary. He testified that the patrol deputy made this "call" and that the investigation bureau was not involved.

[9] Sergeant Taylor said that it did not surprise him that the victim's purse and its contents were not recovered because it was typical that "it gets thrown or passed around to somebody else and [they] never find it."

Detective Chapman with the Jefferson Parish Sheriff's Office testified that in May 2018, he became involved in the investigation of a purse snatching.[10] During his investigation, Detective Chapman learned about a license plate potentially involved in the incident based on the Tiburon report and the 9-1-1 calls. He explained that another detective listened to the radio traffic and ran the ALPR system based on information, including the direction of the vehicle's travel and the vehicle's partial plate number provided by the anonymous witness. From that information, that detective observed a silver convertible with a black top and was able to view the vehicle's entire license plate. Based on this information, Detective Chapman ran the plate through their databases and discovered that the vehicle was registered to defendant.

Detective Chapman provided that he retrieved video surveillance footage from the Budget Saver and it was played for the jury. In the video, he identified the victim with her purse as she walked out of the store. Detective Chapman explained that another individual could be seen walking, "standing right here and passing back and forth, right there." The detective relayed that the individual was walking back and heading towards the victim's vehicle. The detective stated, "That's him, he walked past the vehicle, she's at the vehicle; he stops here. Now he runs." He also said, "Now he runs…He came back again. He runs this way and you don't see him again after that. But he ran in the direction where the anonymous witness saw him."[11] On cross-examination, Detective Chapman acknowledged

---

[10] He testified that as a member of the burglary unit, he became the follow-up detective when a road deputy reduced the signal to a vehicle burglary.

[11] Detective Chapman further testified that around "14:18:42" in the video, a convertible with a black rag top could be seen pulling into a parking space on the front row. He pointed out that at "14:19:42," an individual "came from where the car was parked" and that the same male that entered the store was now exiting the store. He narrated that at "14:22," the vehicle pulled out of the parking space and exited the lot in the direction of Lapalco. Detective Chapman stated that the same individual could be seen returning to the parking lot at about "14:30." He denied seeing the silver convertible return to the parking lot. He pointed out that the individual came from the direction that the vehicle exited the parking lot. Detective Chapman relayed that he saw the individual further back in the parking lot at another point in the video.

that he was unable to determine the make or model of the perpetrator's vehicle from the surveillance video.

Discussion

In his sole assignment of error on appeal, defendant argues that the trial court's failure to include theft as a responsive verdict, and to instruct the jury on the statutory definition of this crime, was reversible error. For the following reasons, although we do find that theft is a proper responsive verdict to the crime of purse snatching, we find that defendant failed to object to the exclusion of the responsive verdict and has thus waived this issue for consideration on appeal.

La. R.S. 14:65.1 defines the crime of purse snatching as follows:

> Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.

La. C.Cr.P. art. 814 does not mandate responsive verdicts for the crime of purse snatching, and thus, La. C.Cr.P. art. 815 applies. Therefore, the applicable responsive verdicts as set forth in La. C.Cr.P. art. 815 are: (1) guilty; (2) guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) not guilty.

Louisiana law has recognized that theft is a lesser and included offense of purse snatching. "[A]ll essential elements of the crime of theft are included in the crime of purse snatching: (1) *the theft,* (2) *of anything of value* contained within a purse or wallet at the time of the theft, (3) *from* the person of *another* or which is in the immediate control of another, (4) by use of force, intimidation, or by snatching, *i.e., without the consent of another.* As such, theft is clearly a lesser and included offense of purse snatching." *State v. Marts*, 98-0099 (La. App. 4 Cir.

5/31/00), 765 So.2d 438, 445; *see also State v. Randel,* 573 So.2d 616, 619 (La. App. 2d Cir.1991) ("Theft is an essential element of purse snatching….").[12]

However, La. C.Cr. P. art. 841 provides, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose of the requirement of a contemporaneous objection is to put the trial judge on notice of an alleged irregularity so that he or she may cure a legitimate problem and prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. *State v. Devillier*, 17-572 (La. App. 5 Cir. 10/17/18), 258 So.3d 230, 261, *writ denied*, 18-01855 (La. 10/8/19), 280 So.3d 589. For instance, a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C.Cr.P. art. 801(C).

The record in this case reflects that defendant failed to make a timely objection to the trial court's exclusion of theft as a responsive verdict to the charged crime of purse snatching. *State v. Morris*, 05-290 (La. App. 5 Cir. 11/29/05), 917 So.2d 633, 641. At the conclusion of trial, the trial judge instructed the jury that it could find defendant guilty as charged of purse snatching, guilty of attempted purse snatching, or not guilty of purse snatching. The record does not reflect that defendant lodged a contemporaneous objection to that charge.

Defendant contends on appeal that failure to include a proper responsive verdict is an error patent on the face of the record that must be corrected on appeal

---

[12] The Supreme Court has held that "snatching" does not require an actual face-to-face confrontation, and is distinguished from "use of force" and "intimidation" by the statute's very wording. *State v. Anderson,* 418 So.2d 551 (La. 1982). "The state need only show that force **or** intimidation **or** snatching was used to accomplish the theft of something of value from the purse that is within the immediate control or on the person." *State v. Marts,* 98–0099 (La. App. 4 Cir. 5/31/00), 765 So.2d 438, 444 (emphasis in original); see also *State v. Boss*, 03-133 (La. App. 5 Cir. 5/28/03), 848 So.2d 75, 78, *writ denied,* 03-1968 (La. 5/14/04), 872 So. 2d 508; *State v. Harrche*, 11-183 (La. App. 5 Cir. 12/13/11), 81 So.3d 861, 866, *writ denied sub nom. State ex rel. Harrche v. State*, 12-0342 (La. 8/22/12), 97 So.3d 372.

pursuant to La. C.Cr.P. art. 920.  However, the Louisiana Supreme Court has instructed that an "alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, is not reviewable under Art. 920(2) and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error." *State v. Craddock*, 307 So.2d 342, 343 (La. 1975); *see also Morris,* 917 So.2d 633.

Accordingly, for the reasons provided, we find that defendant failed to object to the exclusion of theft as a responsive verdict for the crime of purse snatching and, thus, has waived this argument on appeal.  Consequently, we affirm defendant's conviction and sentence.[13]

## ERRORS PATENT DISCUSSION

This Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990), regardless of whether defendant makes such a request.

*Waiver of Delay*

La. C.Cr.P. art. 873 requires a twenty-four-hour delay in sentencing after the denial of a motion for new trial unless the defendant waives the delay. When the defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated by law cannot be considered harmless error. *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 944, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321. However, when the original sentence has been set aside in a habitual offender proceeding, the failure to observe the twenty-four-hour delay is harmless. *See State*

---

[13]As stated previously, defendant asks alternatively that this Court remand this matter for an evidentiary hearing on his claims of ineffective assistance of counsel.  We find that this assignment of error concerning ineffective assistance of counsel would be more appropriately asserted in a separate application for post-conviction relief and, thus, we decline to address that issue.

*v. Cummings*, 10-891 (La. App. 5 Cir. 10/25/11), 79 So.3d 386, 404, *writ denied*, 11-2607 (La. 4/9/12), 85 So.3d 693.

On August 4, 2021, the trial court denied defendant's motion for post-verdict judgment of acquittal and motion for new trial. Later that same day, defendant's original sentence was imposed. He stipulated to being a multiple offender and his original sentence was vacated before his enhanced sentence was imposed. Therefore, despite the trial court's failure to observe the twenty-four-hour delay in sentencing, we find the error harmless because defendant's original sentence was set aside in a habitual offender proceeding. *See State v. Cummings*, *supra*.

*Post-Conviction Relief Advisal*

A review of the transcript of the proceedings on August 4, 2021 reveals that the trial judge did not advise defendant of the prescriptive period for filing post-conviction relief after his original sentencing or after defendant was resentenced following his stipulation as a third-felony offender on that date. However, the sentencing minute entry indicates that defendant was advised after his original and enhanced sentencing that "he has thirty (30) days from today's date to appeal this conviction, and two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief." When a discrepancy exists between the minute entry and the transcript, the transcript generally prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

If the trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *See State v. Perez*, 17-119 (La. App. 5 Cir. 8/30/17), 227 So.3d 864, 870. Therefore, we hereby advise defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if

it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

*Multiple Bill Sentence-Restrictions*

Defendant received an enhanced sentence of twenty-five years in the Department of Corrections as a multiple offender. However, the transcript does not reflect that defendant's enhanced sentence was to be served without benefit of probation or suspension of sentence in accordance with La. R.S. 15:529.1(G). Under *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, 799, and La. R.S. 15:301.1(A), the "without benefits" provision is self-activating. *See State v. Esteen*, 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 78-79, *writ denied*, 02-1540 (La. 12/13/02), 831 So.2d 983. However, the record reflects neither the multiple offender State of Louisiana Uniform Commitment Order (UCO) or the sentencing minute entry reflect the imposition of these restrictions nor does it reflect that the entire sentence is to be served without benefit of probation or suspension of sentence. *See State v. Woods*, 15-247 (La. App. 5 Cir. 9/23/15), 176 So.3d 672.

To ensure accuracy in the record, we hereby remand this matter to the trial court, direct the trial court to make the appropriate entries reflecting these changes, and direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections' Legal Department. *See State v. Lyons,* 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, 41, *writ denied*, 14-0481 (La. 11/7/14), 152 So.3d 170; La. C.Cr.P. art. 892(B)(2); *State ex rel. Roland v. State*, 06-244 (La. 9/15/06), 937 So.2d 846.

<u>**AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 7, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-KA-716

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          BERTHA M. HILLMAN (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED