HANS J. LILJEBERG, Judge.
| ¡¿Defendant, Aaron Martin, appeals his 'conviction for second degree murder based on the alleged insufficiency of the evidence to support his conviction. For the following reasons, we affirm defendant’s conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2012, a Jefferson Parish grand jury indicted defendant with the second degree murder of Brian Banks in violation of La. R.S. 14:30.1, and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Defendant was arraigned on August 24, 2012, and he pleaded not guilty. The trial court severed the counts and a jury trial commenced on August 5, 2014, on the second degree murder charge. On August 8, 2014, a twelve-person jury found defendant guilty as charged, and on October 27, 2014, the trial court sentenced defendant to life imprisonment without the benefit of probation, parole or suspension of sentence. Defendant filed a motion for appeal, which the trial court granted, on October 28, 2014.
|3On Easter Day, April 8, 2012, the Ken-ner Police Department (“KPD”) received a 911 call at 8:27 p.m. indicating shots were fired and a black male was lying on the ground with gunshot wounds at 27th Street and Panama Street. Prior to the shooting, a large group of people was gathered at a block party near the location where the shooting occurred.
*792 Officer Nicholas Hoffman of the KPD arrived on the scene at 8:32 p.m. and found a large crowd surrounding the victim. Individuals in the crowd informed officers two black males in white t-shirts and black shorts left in a black SUV. Officer Andrew Scott of the'KPD immediately conducted a traffic stop on a black SUV located one or two blocks away from the crime scene. The individual driving the vehicle provided the name “Chad James.” He did not have a driver’s license or other form of identification. Officers determined probable cause did not exist to arrest the occupant and allowed him to leave.[1]
While on the scene of the murder, a female approached Officer Hoffman and told the officer, “Mug shot him.” Someone grabbed the woman and told her not to speak to the police. Officer Hoffman did not obtain any identifying information from the female. At 8:42 p.m., Officer Hoffman dispatched information that a black male named “Mug” with dreads and average height and build, left the crime scene in a gray Impala.[2] Officers ran the name “Mug” on the police computer, and obtained defendant’s name, Aaron Martin.
Officer Aaron Couterie prepared the police report regarding this incident. The report indicated the murder suspect had dreads “ear to shoulder.” Officer Couterie obtained the information regarding the “dreads” from Officer Hoffman. RHowever, Officer Hoffman did not provide him with any information regarding the length of the “dreads.” Officer Cout-erie explained he added the description of the dreads as “ear to shoulder” based on his own assumption that “dreads” are usually shoulder length.
Trooper Shane Tilford of the Louisiana State Police testified that at the time of the incident, he was a KPD detective and the lead investigator on this homicide. According to Trooper Tilford, the victim’s mother, Katrina Banks, informed him James Munson had information regarding the homicide. The next day, Trooper Til-ford spoke to Mr. Munson, but he was uncomfortable talking to officers in the neighborhood. Mr. Munson met with officers at the police station and provided a recorded statement naming “Mug” as the shooter who killed Mr. Banks. Mr. Mun-son also identified defendant in a photographic lineup.
James Munson testified at trial that Mr. Banks was his friend for 10 years. Prior to the' shooting, Mr. Munson and Mr. Banks attended the block party on Panama Street. They arrived at the party around 7:30 p.m., drank alcohol and smoked marijuana.[3] Mr. Munson knew defendant from the neighborhood and saw him at the Panama Street party.
After approximately 30 or 40 minutes, Mr. Banks was ready to leave the party. Mr. Banks and Mr. Munson both began walking around the comer to Huntsville Street. Mr. Munson then heard a “big noise” and saw defendant walk towards them while shooting a gun. According to Mr. Munson, defendant shot Mr. Banks eight or nine times and Mr. Banks fell to the ground. Mr. Munson was three feet *793 away from Mr. Banks when defendant shot him at close range, and he saw defendant’s face during the shooting. He did not see defendant and Mr. Banks fighting or exchanging words prior to the shooting.
[ 5After the shooting, Mr. Munson testified he saw defendant run into a backyard. Mr. Munson ran to the home of Mr. Banks’ aunt, which was a block over on Huntsville Street, to tell them about the shooting. He stated he also ran to Richland Street before he returned back to the murder scene. He was nervous after the shooting and was in shock about what he witnessed. He did not say anything to the police when he returned to the scene.
Mr. Banks’ aunt, Trevia Bennett, testified that on the night of the murder, Mr. Munson came running through her door.[4] She described Mr. Munson as screaming, crying, sweating, and hysterical. Mr. Munson repeatedly yelled “they killed him.” Ms. Bennett drove to the crime scene and saw her nephew lying on the ground. Mr. Munson returned to the scene minutes later, and was pacing and holding his head. Mr. Munson then sat on the curb and cried for a long period of time. Later that night, Ms. Bennett, Mr. Munson and several other family members gathered on Huntsville Street at Robin Tobias’ house.[5] During the gathering, Mr. Munson told the victim’s family members “Mug” shot the victim.
Mr. Munson admitted he had prior convictions for possession of cocaine and possession of marijuana in March 2010. He also previously pleaded guilty to aggravated flight. After pleading guilty in 2010, his probation was revoked. Mr. Munson was arrested for failing to appear to testify in front of the grand jury regarding this matter. He also was subsequently arrested and convicted for distribution of marijuana in October 2013, and was serving a ten-year sentence at the time of this trial. Mr. Munson admitted he has a tattoo which says “Goon,” but denied he was the member of the Goon gang.[6]
1 ^Following his distribution of marijuana conviction, Mr. Munson was in the Jefferson Parish Correctional Center (“JPCC”) for one week in October 2013. During that time, he saw defendant in the JPCC and defendant asked Mr. Munson to write a letter recanting his statement naming defendant as the shooter. Mr. Munson agreed and handwrote the letter, but he testified defendant provided the words. In the letter, Mr. Munson stated the shooter had long dreadlocks and he identified “Mug” as the shooter because he heard a female state this at the crime scene. He stated he later learned defendant never had dreadlocks which reached his shoulders and, therefore, defendant could not have committed the shooting. Mr. Mun-son then gave the letter to defendant. At trial, Mr. Munson explained he agreed to write the letter because he wanted to be able to retaliate against defendant “back on the streets.” He also testified the State did not promise him anything in exchange for his testimony at trial.
Darkus Bellard also testified that she witnessed defendant shooting Mr. Banks. Ms. Bellard testified Mr. Banks was like a son to her and she had known defendant for 10 or 15 years since he was young. *794 She admitted she used and sold drugs, had sex with people for drugs and money, and worked as a confidential informant for the KPD since 2006 or 2007. Ms. Bellard had always remained anonymous and never previously testified in court.
Ms. Bellard testified that prior to the shooting, she wanted to buy drugs. She saw Mr. Banks and asked him for crack. He told her to go to the comer of Panama Street and 27th Street. She walked to the comer to wait for Mr. Banks and heard arguing and cursing. She testified there were many people on the scene from the block party. Ms. Bellard told officers she heard defendant say “[h]e’s not going to live to testify for the D.A.s [sic],” but at trial stated she could not remember whether she actually heard defendant make this statement. Ms. Bellard testified 17that as Mr. Banks walked towards her, she saw defendant pull out a gun and shoot Mr. Banks in the face or neck. She heard between three and six gunshots.
Ms. Bellard then saw defendant run back towards Huntsville and leave in a silver Impala driven by a black male. She thought she saw a girl get into the vehicle as well. Ms. Bellard explained defendant usually drove a gold Impala. She avoided the police at the scene and did not want to be involved.
The day after the shooting, Ms. Bellard was arrested for driving without a license in Kenner. When she was arrested, she told officers she had information regarding Mr. Banks’ murder. This was the first time she provided information to the police regarding a murder. Ms. Banks initially spoke to Detective Schleuter for whom she previously served as a confidential informant. Detective Charlotte Synigal also spoke to Ms. Bellard regarding the murder and Ms. Bellard told her defendant shot Mr. Banks. Ms. Bellard also identified defendant as the shooter in a photographic lineup.
Ms. Bellard admitted she was high when she met with Detective Synigal because she stayed up doing drugs after the shooting occurred. She did not tell Detective Synigal everything about the night of the murder because she wanted to go home and continue to “get high.” Ms. Bellard was subsequently released, but she was unsure whether the police helped her obtain the release. Ms. Bellard testified the district attorney’s office helped her relocate for her safety, but did not offer her anything else in exchange for her trial testimony.
Ms. Bellard admitted to prior convictions for possession of drugs and theft. At the time of trial, Ms. Bellard had a misdemeanor attachment for possession of drug paraphernalia. Ms. Bellard also testified she had been clean and sober for two years at the time of the trial.
| «Trooper Tilford also obtained information regarding the murder from Demetrice Winzy. Ms. Winzy was in jail in Kenner after she was arrested for simple criminal damage to property and criminal trespassing. She told officers she wanted to speak to the detective handling Mr. Banks’ murder investigation. Ms. Winzy told Trooper Tilford she lived next door to Danielle Abbott on Salem Street approximately eight blocks from the murder scene. Ms. Abbott was defendant’s girlfriend at the time of the murder. Ms. Winzy knew defendant and Ms. Abbott all of her life and they were like family to her.
At the time of the trial, Ms. Winzy was in jail on a material witness warrant, and had just pleaded guilty to bank fraud and received three years of probation. She testified that defendant arrived at her apartment building in a silver Impala with his friend, Robert Causey, between 8:45 p.m. and 9:00 p.m. on the night of the *795 murder. Defendant was standing outside of her apartment building talking with friends. She also saw defendant burning a shirt, shoes and socks in a pot outside of the residence. Trooper Tilford seized the pot and retrieved charred material, which included a charred metal button, circular metal eyelets, and burnt cloth.
Ms. Winzy described defendant to the officers as having “dreads.” She explained the dreadlocks were not to his shoulders and instead he had “a little dread like Afro” or “twists.” Ms. Winzy also identified defendant and Mr. Causey in a photographic lineup.
Danielle Lathers, defendant’s close friend, testified that she contacted the police once she learned of defendant’s arrest for the murder. Ms. Lathers did not think defendant committed the murder because he was at a party on Elm Street in Metair-ie between 6:45 p.m. and 9:30 p.m. She testified defendant remained at the party until multiple police officers arrived to break up a fight. According to Ms. Lathers, the party on Elm Street was five or six miles away from the crime scene. |9Ms. Lathers testified that after the party on Elm Street, defendant went to her house on Cumberland Street in Metairie and spent the night at her residence. The next morning, she dropped defendant off on 27th Street in Kenner.
Ms. Lathers testified she and defendant previously had an intimate relationship, but were not intimate at the time of the murder. She acknowledged a phone conversation she had with defendant where they discussed information she would provide to the police. During the conversation, they discussed how defendant was on Elm Street at the time of the shooting.
Danielle Abbott, defendant’s girlfriend, testified she and defendant were at a party on Elm Street in Metairie on the date of the shooting from 7:30 p.m. until 9:30 p.m. or 9:35 p.m. Ms. Abbott and defendant drove to Elm Street in a gold Impala, and Rekitha Lowe[7] and Robert Causey also came to Elm Street in their silver Impala. Ms. Abbott left the party because there was a fight. Defendant was not with her when she left and she did not know where he went. The next time she saw defendant was at 10:00 p.m. or 10:30 p.m., when he came to her apartment on Salem Street to borrow her car.
Detective Leon James of the Jefferson Parish Sheriff’s Office testified that on the date of the incident, he was working a detail at a baby shower located on North Elm Street in Metairie. More than one fight occurred at the same time near the location of his detail. Detective James called for backup at approximately 7:49 p.m. He stated the party ended after the fight sometime between 8:00 p.m. and 8:30 p.m. He said the area in Kenner where the murder occurred was approximately three to five miles from North Elm Street in Metairie. Detective James also stated it would take approximately ten or fifteen minutes to drive from North Elm Street to the murder scene without traffic.
110Robert Causey initially refused to testify on Fifth Amendment grounds. The State filed a motion to compel testimony which granted Mr. Causey immunity for his testimony. At the time he testified, Mr. Causey was serving a 12 year sentence for distribution of cocaine. He knew defendant for more than ten years. On the date of the incident, Mr. Causey, defendant, Ms. Lowe and Ms. Abbott went to a block party on Elm Street at approximately 7:00 p.m. Mr. Causey stayed at the party for 30 to 45 minutes and left when a fight occurred.
*796 After he dropped Ms. Lowe off on Salem Street, Mr. Causey drove down 27th Street in his silver Impala and stopped at a block party on Panama Street. Mr. Causey saw defendant a few yards away from where he parked his car. Mr. Causey testified he saw the victim and Mr. Munson together at the Panama Street party and he and defendant briefly talked to them when they arrived. He did not see defendant, the victim or Mr. Munson argue.
While at the party, Mr. Causey heard approximately five or six gunshots but did not see them. As soon as the gunshots ended, Mr. Causey walked across the street to his car. Defendant also walked to Mr. Causey’s car and said “[t]hey shooting around here.” Mr. Causey did not see defendant shoot anyone, and he never saw defendant with a gun. He testified defendant also said “[n]o one can have fun because of this shooting.” Defendant entered the passenger’s side of Mr. Causey’s car and they returned to Ms. Abbott’s residence on Salem Street and informed people standing outside of the shooting.
Trooper Tilford met with defendant after he was arrested. During the meeting, defendant claimed he was not in Kenner on the night of the murder and would make his “deal with the D.A.’s office.”
Dr. Dana Troxclair, an expert forensic pathologist, performed an autopsy on the victim. Dr. Troxclair determined the manner of death was homicide, and the hi cause of death was multiple gunshot wounds. She explained the victim sustained seven gunshot wounds. Two of the gunshot wounds, which caused damage to the victim’s lungs and his pulmonary artery, were fatal. Stippling surrounding the entry wound on the victim’s right cheek indicated he was shot at close range.
During the autopsy, Dr. Troxclair retrieved at least four bullets from the victim’s body. Sergeant Joel O’Lear, a tool-mark examiner and ballistics expert with the Jefferson Parish Sheriffs Office crime laboratory, determined all of the fired cartridge cases and fired bullets in this case came from the same nine-millimeter weapon.

LAW AND DISCUSSION

Defendant argues on appeal that the evidence is insufficient to support his second degree murder conviction. He challenges the testimony of the two eyewitnesses, James Munson and Darkus Bellard, who identified defendant as the perpetrator of the crime. Defendant contends these eyewitnesses were not credible due to their criminal history and personal relationships with the victim. He argues Mr. Munson was good friends with the victim and has a personal interest in seeing someone punished for his friend’s death. The victim was like a son to Ms. Bellard. Defendant further argues Mr. Munson has a criminal history and was serving a ten year sentence when he changed his testimony again to identify defendant as the shooter. Defendant argues Darkus Bellard’s testimony is unreliable because she served as a paid confidential informant for the KPD and was under arrest for another matter when she gave her statement to police.
Defendant also claims the details and statements provided by these witnesses are inconsistent. He argues Mr. Munson wrote a letter recanting his statement identifying defendant as the shooter. Defendant complains Ms. Bellard’s testimony was contrary to Mr. Munson’s testimony because she claimed she heard L ¡.arguing right before Mr. Banks was shot. Defendant also argues there were inconsistencies between Ms. Bellard’s statement to the police, her grand jury-testimony and her court testimony. Specifically, defendant complains she changed her story about the direction from where she was *797 coming at the time of the shooting and whether a third person got into the car with defendant. She also told detectives she heard defendant say, “[h]e ain’t gonna live to take the stand” prior to the shooting, but at trial she denied telling this to the officers.
The standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes the evidence at trial established guilt beyond a reasonable doubt, but rather whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Cowart, 01-1178 (La.App. 5 Cir. 3/26/02), 815 So.2d 275, 283, writ denied, 02-1457 (La.5/9/03), 843 So.2d 387.
When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Smith, 430 So.2d 31, 45 (La.1983); State v. Brady, 414 So.2d 364, 365 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. Cowart, 815 So.2d at 284. Further, in the absence of internal contradiction or irreconcilable conflicts with | isphysieal evidence, the testimony of one witness, if believed, is sufficient to support a conviction. Id.
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id.
The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Requiring the evidence to be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to the actual trier of fact’s rational credibility calls. State v. Stone, 05-82 (La.App. 5 Cir. 5/31/05), 904 So.2d 810, 814. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. Griffin, 14-251 (La.App. 5 Cir. 3/11/15), 169 So.3d 473, 484.
In State v. Cowart, supra, there was no physical evidence linking the defendant to. the crime and a single witness identified the, defendant as the perpetrator of a shooting. At trial, the defendant attacked the reliability of the eyewitness because she was a convicted felon, had been under psychiatric care, had initially lied to the police, gave a description that did not match the defendant, had perjured herself during motion hearings and changed her story about the crime scene and the number of shots she heard. Despite this lengthy list of deficiencies, this Court held it was within the jury’s discretion to believe the witness’ testimony. Id. at 285.
*798 | uRecentIy, in Griffin, supra, this Court determined the evidence was sufficient to support the defendant’s conviction for second degree murder based on the testimony of a single eyewitness. No physical evidence existed to link the defendant to the murder. The eyewitness was the victim’s childhood friend and provided a statement identifying the defendant as one of three shooters two days after the murder. He did not know the defendant’s name, but knew him from the neighborhood. The eyewitness did not testify because he died of multiple gunshot wounds prior to trial. Therefore, the jury only heard the eyewitness’ taped statement and grand jury testimony. Various witnesses pointed out inconsistencies in the eyewitness’ statement regarding his location when the shooting occurred. The eyewitness purchased beer prior to the shooting and had a conviction for a third offense driving while intoxicated.
Despite the lack of physical evidence linking defendant to the murder in the present matter, two eyewitnesses identified him as the shooter. Mr. Munson told police he saw defendant’s face during the shooting and he identified defendant in a photographic lineup the day after the murder. Mr. Munson knew defendant pri- or to the shooting. Furthermore, it was not irrational for the jury to accept Mr. Munson’s explanation as to why he wrote the letter recanting his initial statement to the police. Mr. Munson did not describe the shooter as having “dreads” to his shoulder at any other time. Defendant did not have long dreadlocks in the photographic lineup presented to and identified by Mr. Munson.
Furthermore, Ms. Bellard testified she saw defendant shoot Mr. Banks. She was afraid, had been placed in a witness protection program and did not want to testify at trial. As stated, a positive identification by only one witness is sufficient to support a conviction. See Cowart, supra.
hflln addition to the eyewitness testimony, defendant’s close friend, Robert Cau-sey, placed defendant near the scene of the murder when it occurred. Defendant’s alibi witness, Danielle Lathers, provided a conflicting story claiming defendant went to her home after the Elm Street party. Ms. Winzy testified defendant was like family to her. She reluctantly acknowledged that she saw defendant bum a shirt, socks and shoes shortly after the murder outside the apartment building on Salem Street.
We find the jury made credibility determinations and chose to believe one or both of the eyewitnesses to the shooting over the testimony of defendant’s alibi witnesses. A review of the record reflects the jury’s credibility determinations were rational. Thus, viewing the evidence in the light most favorable to the prosecution, we find the State proved defendant committed the second degree murder of Brian Banks beyond a reasonable doubt.

ERRORS PATENT

We reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error patent requiring corrective action was noted.
First, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post conviction relief as required by La.C.Cr.P. art. 930.8, the transcript indicates the trial court failed to give such an advisal. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we hereby advise defendant that, pursuant to La. C.Cr.P. art. 930.8, no application for post- *799 conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the 1 ^judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. See State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42.

DECREE

For the foregoing reasons, we affirm defendant’s conviction and sentence.

AFFIRMED

.An individual named Chad James, who lives in Kenner, Louisiana, testified at the trial. Mr. James explained he was not driving a black SUV on the night of the murder. He also explained the vehicle police stopped belonged to his cousin, Ron James. Ron James used Chad’s name two or three times in the past.

. Photos of defendant following his arrest indicate he had short "twists” or dreadlocks at the time of his arrest.

. The Assistant District Attorney reported Mr. Munson told her he also took a Lortab on the night of the murder, but Mr. Munson denied making this statement at trial.

. Ms. Bennett’s home is on Fayette Street, approximately six blocks from where the shooting occurred. Ms. Bennett is the sister of the victim’s mother, Katrina Banks.

. Ms. Tobias is also Katrina Banks’ sister and the victim’s aunt.

.The victim also had a "Goon” tattoo and was thought to be a member of the Goon gang.

. Ms. Lowe was Robert Causey's girlfriend.